Jasen, J.
Defendant was charged by indictment with the crimes of possession of a weapon as a felony, assault in the second degree, resisting arrest and inciting to riot. He was convicted, after a jury trial, of resisting arrest. (Penal Law, § 205.30) and harassment (Penal Law, § 240.25), submitted to the jury as a lesser included crime of assault.[1]
On this appeal, we are asked to pass on the question whether, upon the record below, the trial court erred in refusing a requested charge that self-defense is a defense to the crimes of assault second degree and resisting arrest.
All of the charges against the defendant stemmed from a fracas which occurred on Sunday, July 6, 1969, at about eight *110 o’clock in the evening, at 125th Street and Park Avenue, in Manhattan. Police Officer Davis testified that he was on foot patrol in uniform in the area when he heard the blowing of automobile horns emanating from the intersection. Upon reaching the intersection,' he observed that a 1964 Chevrolet was parked in the eastbound traffic lane of, 125th Street under' the New York Central Railroad overpass and it “ creatéd a whole traffic jam there” as eastbound traffic tried to use the westbound lane to go around the illegally parked Chevrolet. The officer approached the vehicle from behind, noticing that the registration on the license plate had expired two months earlier. He then walked to the door of the driver’s side and noticed that no one was sitting in the driver’s seat, but that there were two passengers in the car. Davis asked the passengers who the driver was and his whereabouts, but received no reply. As he reached into the car to remove the ignition key, he was pushed from behind and fell against the car. He turned and saw the defendant standing alongside him.. Thereupon the defendant said, “ What the God damn hell are you doing in that car? You have no damn business going in my car.” Whereupon Officer Davis “told the defendant that he was under arrest for harassment.” As the officer started towards this defendant to make the arrest, the defendant, backing up, said, ‘ ‘ no, no, no ”, and “ started throwing both hands, closed fists, swinging both hands.” A scuffle ensued during which Officer Davis was shoved into the car and bumped backwards and forwards against the car”, while attempting to “ grab the defendant and hold him.” Finally,, after assistance arrived, the defendant was handcuffed and removed to the precinct station, still ‘ ‘ shouting, screaming and trying to break away.” In addition to Officer Davis, the prosecution called four other police officers who were present at the scene of the arrest at various times and one ballistics expert.
The defendant testified in his own behalf that he had borrowed the 1964 Chevrolet in order to perform an errand and was not aware that a pistol was in the glove compartment. While performing the errand, defendant was driving unlicensed and had no registration for the vehicle. At 125th Street and Park Avenue, he stopped to get frankfurters and a drink for his two passengers. When he returned with the food, he noticed *111 Officer Davis leaning inside the car. The officer asked for his license and registration and ‘ ‘ I asked him what was wrong and he said I was obstructing traffic and I said I wasn’t. So he said ‘ Give me your license and registration. ’ And I said, ‘ Just a minute. ’ And I put my hand inside the car to give the franks and drinks to the people inside and he pushed me * * * I asked him why is he pushing me for. He asked me [again] for my registration, so what — you know, what is he edging me on for? * * * So I said ‘Why?’ I kept on asking him why. He said, ‘ You are under arrest.’ I said, ‘ No, for what? ’ * * * he just kept on saying, ‘ No, you are under arrest,’ and was grabbing for me.” He then noticed two other police officers approaching the scene with one of the officers wielding his “stick”. Afraid that he was going to be beaten, he grabbed Officer Davis by the shoulders and swung him around so that he was between him and the oncoming officers. “ Please don’t let them hit me,” he told Davis. “ If there is something wrong, I’ll go with you but don’t let them hit me.” He stated he never punched or kicked any of the officers, but that he was kicked and hit. After several other officers had joined the fracas, he was taken to the precinct house. He had been unaware that a large crowd had collected, although he had been shouting for help during the fight.
Defendant contends that the trial court’s instructions as to the defense of justification were inadequate to define his rights of resistance.
We cannot agree. The court adequately instructed the jury as to the elements of resisting arrest pursuant to section 205.30 of the Penal Law — “A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer from effecting an authorized arrest of himself or another person.” In charging the jury, the court gave a careful and detailed explanation of the specific intent necessary for a conviction. Further, the court instructed the jury that the People must also establish that the arrest be lawful and that the crime of resisting arrest does not occur if the arrest is illegal or unlawful. The court’s instructions set forth this element in its description of the resisting arrest count, and in its reading of section 205.30 of the Penal Law. Thus, the court gave two *112 bases for a lawful arrest — either a motor vehicle crime or a physical aggression against the officer.
We conclude that the court’s treatment of the offense of resisting arrest wa's adequate and fair.
Turning now to the issue of whether-the court’s instructions relating to defendant’s rights of resistance were adequate (Penal Law § 35.15)[2], there can be no cavil with the proposition that a citizen may use reasonable force in self-defense where the force exerted by the police in effecting an arrest is excessive. (Penal Law, § 35.15; People v. Sanza, 37 A D 2d 632; People v. Curtis, 70 Cal. 2d 347; State v. Mulvihill, 57 N. J. 151; 5 Am. Jur. 2d, Arrest, § 94, p. 779.) Nor can there be any doubt that force used by the police may reach such dimensions as to be illegal. (Cf. former Code Crim. Pro., § 172; Penal Law, § 35.30.)
Here, however, the record afforded no basis for a charge ad to self-defense. The first inkling of any conduct on the defendant’s part which would indicate self-defense came when he swung Patrolman Davis around to use him as a shield. However, prior to that act, the defendant, by his own testimony, had already shown the requisite intent necessary for a conviction of resisting arrest. Defendant testified, “ [Officer Davis] said, ‘ You are under arrest.’ I said, ‘ No, for what? ’ And all the time he was telling, no, I was under arrest and I was asking for what, you know. * * * And he just kept on-saying, * No, you are under arrest, ’ and was grabbing for me ”.
It has been said that “ [i] t is not necessary that a defendant use ' force or violence ’ in obstructing the officer. It is enough that he engage in some conduct with the intent of preventing the officer from effecting an authorized arrest of himself or another person ”. (Practice Commentary by Denzer and McQuillan, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 205.30, p. 677; People v. Simms, 36 A D 2d 23; People v. Lattanzio, 35 A D 2d 313; cf. People v. Williams, 25 N Y 2d *113 86; People v. Crayton, 55 Misc 2d 213.) The defendant’s own testimony establishes that he refused to submit to the authority of the arresting officer after he was advised of his arrest. The conduct of the defendant, whether verbal or physical, clearly established the requisite intent — i.e., that defendant would not submit to the arrest — for resisting arrest prior to the arrival of the other policemen. Whatever occurred, and it is, of course, disputed, after defendant attempted to use Patrolman Davis as a shield is moot, inasmuch as the defendant’s conduct prior to that time had established his intent to resist. At the time of defendant’s initial resistance, nothing in the record would indicate either an ‘ unprovoked police assault or of the use of excessive physical force ” justifying a charge as to self-defense. (People v. Sanza, 37 A D 2d, at p. 632.) Hence, the court correctly refused to elaborate upon any theory of self-defense in response to the jury’s question as to the difference between defending one’s self and resisting arrest.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Sceleppi, Bergan, Breitel and Gibson concur.
Order affirmed.

. Although this court has since held that harassment cannot be a lesser included crime of assault (People v. Moyer, 27 N Y 2d 252), defendant’s failure to object to the charge precludes him, as he concedes, from asserting that the harassment conviction should be reversed on the law.

. “ § 35.15. Justification; use of physical force in defense of a person.
1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other pefson.”