OPINION OF THE COURT
Irene J. Duffy, J.
When a jury has made a mistake, it becomes the awesome duty of the Trial Judge to seemingly defy the community voice of the verdict and set it aside. I believe it is my duty to do so in this case and to not allow what I perceive as an improper verdict to stand.
In this case the blowing of a car horn on the streets of New York City triggered a series of events that led ultimately to defendant’s conviction by a jury of criminal impersonation and resisting arrest. (The same jury acquitted the defendant of reckless endangerment, second degree.) It is this jury verdict that I believe it is now my duty to set aside. In doing so, I am not unmindful of the province of the jury and I in no way wish to invade that province. Yet to allow this verdict to stand under the circumstances of this case would be a grave miscarriage of justice.
As seen from a perspective most favorable to the People the facts are set forth as follows.
*139 On November 6,1981 at about 5:30 p.m. the complaining witness, a Conrail police lieutenant in uniform, was driving on Exterior Street in Bronx County in a marked Conrail police vehicle, working his tour of duty for Conrail. His job required that he travel between Conrail facilities via city streets. While so traveling, he was caught in a traffic snarl caused by two cars double-parked opposite each other and blocking the street. While the complaining witness was in the process of speaking to one of the drivers of these cars, in an effort to clear the street, his attention was drawn to defendant’s car which was parked behind that double-parked car. His attention became focused on defendant’s car because of what complaining witness described as excessive horn blowing coming from defendant’s car. The complaining witness pulled his car up to the defendant’s car and inquired as to defendant’s horn blowing. According to the People’s version of the facts, the defendant told the complaining witness that he was “on the job * * * had left [his] shield at home * * * and * * * was late for work.” Defendant was in fact a retired New York City detective on his way to work as a detective at Yonkers Raceway. He was licensed to carry a concealed gun and in fact had a pistol on his person. As to the horn blowing, defendant advised the complaining witness that it was none of his business anyway. At this point, the complaining witness asked to see defendant’s license, registration and insurance identification. Defendant did not comply with complaining witness’ request and instead, according to the People’s version of the facts, advised complaining witness to “Go to Hell.” Defendant then drove away from the scene. The complaining witness thereupon turned on the lights and siren of his car, made a U-turn, and followed the defendant’s car.
The complaining witness stopped next to the defendant’s car on two occasions and ordered the defendant to pull his car over. Defendant waved the complaining witness away and continued driving. The defendant then drove onto the Major Deegan Expressway with complaining witness following in a Conrail car with lights and siren on. Complaining witness forced defendant’s car off the expressway and onto the side of the road. Both the defendant and complain *140 ing witness exited from their cars. As complaining witness approached the defendant, complaining witness advised the defendant that he was under arrest. Pointing to complaining witness’ gun, the defendant indicated that he also possessed a gun and stated that he was “one of you.” The complaining witness thereupon pulled out his gun, walked in front of the defendant and pointed the gun directly at the defendant. The defendant grabbed the barrel portion of the complaining witness’ gun. They scuffled and the gun went off hitting either the defendant’s car or the ground near complaining witness’ feet. The defendant was thereafter handcuffed with the aid of two passing court officers. He was placed in the Conrail police car and taken to the local police precinct where he was charged with violations of section 1102 of the Vehicle and Traffic Law (five counts) and section 151 of the Traffic Regulations of the City of New York as well as the Penal Law (Penal Law, §§ 190.25 [criminal impersonation], 205.30 [resisting arrest], 120.20 [reckless endangerment, second degree]).
It was clear at the outset of this matter that the legality of the initial stop and the complainant’s power to make the initial arrest was critical to the case. There was, however, confusion between the parties as to the applicable law. This confusion was made obvious to the court by the defendant’s written memorandum of law submitted together with his request to charge which cited the old unamended section of CPL 140.25 (subd 5, par [c]) as the applicable law of arrest by a peace officer. Indeed, the defendant fluctuated even during the trial proper concerning whether or not the court should or should not charge the law of arrest. (The written requests to charge submitted by defendant requested the court to read the law of probable cause to arrest. Just prior to the charge, defendant verbally rescinded his request.)
In spite of its importance and the confusion as to the applicable law of arrest, there was no pretrial motion by suppression or otherwise to test the legality of the initial stop and the complaining witness’ power to make the initial arrest. Instead, the matter went directly to a jury trial at which the defendant was convicted of criminal *141 impersonation (Penal Law, § 190.25) and resisting arrest (Penal Law, § 205.30).
Defendant now moves “pursuant to Section 440.10 CPL” for an order “Vacating the Judgment of Conviction.” This motion is construed as a motion to set aside the verdict.
During the trial, defendant had moved for a trial order of dismissal (CPL 290.10, subd 1) at the close of the People’s case and, also at the close of the evidence, urging that the arrest was invalid. This court denied the motions without prejudice to renew at a later time. Such a denial was in my opinion tantamount to reserving decision on the motion, and will be considered as such for the purposes of the instant motion. The denial was made notwithstanding the apparent merit, in the belief that both the community and the defendant generally would be well served by having the judgment of the jury. I do not retreat from that belief.
In my opinion, the use of this procedure was warranted in the present case for several reasons. Although there was not a vast disagreement concerning the facts of this case, there was considerable disagreement and confusion as to the applicable law concerning the validity of the initial stop and arrest, making error by the trial court all the more possible. Second, any error by the trial court in granting the defendant’s motion before submission to the jury would not be appealable by the People and would bar further prosecution on account of double jeopardy. (See People ex rel. Pendleton v Smith, 54 AD2d 195.) However, any error by the trial court in now granting defendant’s motion, after there has been a jury verdict, would not have the same effect. (See CPL 450.20, súbd 2.) After there has been a jury verdict, an appellate court in reversing a trial order of dismissal could merely reinstate the jury verdict and remand the case for entry of judgment. (See People v Leach, 46 NY2d 821.) Third, by allowing the case to go to the jury, the entire record of this case would go to an appellate court for its consideration. Finally, as a pragmatic matter, I felt it inappropriate to allow the jury to remain totally idle while I tried to clarify the confusion of the parties concerning the applicable law of arrest. It is my belief, however, that the jury erred and that the verdict is improper. The verdict as I perceive it is improper because *142 the complaining witness lacked the power to make the initial arrest for horn blowing and because the proof was insufficient as a matter of law to sustain the convictions.
One of the central legal issues involved in the instant matter is whether or not a railroad policeman driving a railroad-owned vehicle on a city street to and from a railroad-owned facility on his tour of duty is authorized to make a warrantless arrest of someone for blowing his horn on a city street in violation of section 151 of the Traffic Regulations of the City of New York; and if he is authorized to do so, then under what circumstances is this allowed.
Section 151 of the Traffic Regulations of the City of New York provides that “a driver shall sound the horn of his vehicle only when necessary to warn a person or animal of danger.” A violation of this section is not a crime but is merely a petty offense. (See CPL 1.20, subd 39; Penal Law, § 10.00, subd 2; Vehicle and Traffic Law, § 155.) It is also clear that if the initial arrest for horn blowing was not authorized, then the complaining witness was without authority to either demand the defendant’s registration, license and insurance, or to later detain or arrest him for such a horn blowing violation. (People v Howard, 50 NY2d 583.)
If the complaining witness lacked the authority for the initial arrest, there could be no crime of resisting arrest. (People v Stevenson, 31 NY2d 108.) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer from effecting an authorized arrest of himself or another person. (Penal Law, § 205.30.) In addition, if the arrest was illegal, then the second set of statements made by defendant after he was told he was under arrest would be fruits of the illegal arrest and as such suppressible, had such a motion been made by defendant.
There is no dispute that the complaining witness was a peace officer under the CPL (CPL 2.10, subd 22.) Thus, in the context of this case, the complaining witness-peace officer’s authority to arrest is based upon the CPL (CPL 140.25) provisions regarding arrests that are made by a *143 peace officer either pursuant to his special duties or while he is in the “geographical area of his employment.”
Pursuant to CPL 140.25 (subd 1, par [a]), a peace officer, acting pursuant to his special duties, may arrest a person for “[a]ny offense when he has reasonable cause to believe that such person has committed such offense in his presence”. Arrest provisions with respect to police officers and those with respect to peace officers are carefully delineated under the CPL, the main distinction being that while there is no limitation imposed upon the “off-duty” arrest authority of police officers, a peace officer may exercise this authority only when acting pursuant to his specialized duties. (See Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 140.25, pp 307-308.)
CPL 140.25 (subd 2) provides:
“A peace officer acts ‘pursuant to his special duties’ in making an arrest only when the arrest is for:
“(a) An offense defined by a statute which such peace officer, by reason of the specialized nature of his particular employment or by express provision of law, is required or authorized to enforce; or
“(b) An offense committed or reasonably believed by him to have been committed in such manner or place as to render arrest of the offender by such peace officer under the particular circumstances an integral part of his specialized duties.”
In the case at bar, it is my opinion that as a matter of law the complaining witness, a peace officer, was not acting here “pursuant to his special duties.” As a Conrail employee, the complaining witness is not required or authorized by the nature of his work to enforce traffic infractions such as horn blowing occurring solely on the streets of New York City and which in no way interfere with or are related to the operatibn of the railroad.
Section 88 of the Railroad Law specifically provides that railroad policemen may effect the arrest of all persons committing offenses upon the land of or upon property in the custody of or under the control of any corporation owning or operating a railroad. The horn blowing in the *144 instant case did not occur upon property owned, in the custody of, or controlled by the railroad.
Nor was the arrest of defendant an “integral part” of the specialized duties of the railroad peace officer. As a railroad policeman, it is the complaining witness’ job to insure the smooth operation of the railroad which is in no way related to the blowing of horns on city streets.
The CPL further provides that a peace officer, whether or not acting pursuant to his special duties, may arrest a person for an offense if said offense was in fact committed in his presence and said act was within his “geographical area of employment” (CPL 140.25, subds 3, 5). Under these subdivisions, it is my opinion that a peace officer has no more authority to arrest for the petty offense of horn blowing on a city street than a private citizen (see CPL 140.30 — arrest without a warrant by any person — the so-called “citizen’s arrest”). Accordingly, the word “presence” authorizing such an arrest means that the person making the arrest must have actually observed acts which were in themselves sufficiently indicative of a crime or offense being in the course of commission. (See United States v Viale, 312 F2d 595.) In the case at bar, the People failed to prove that the complaining witness-peace officer had actually observed defendant blowing his horn. The mere sound of horn blowing from the car which was driven by the defendant, without more, is in my opinion, insufficient to prove beyond a reasonable doubt that the actual offense was committed in complaining witness’ presence. There was no evidence that this defendant touched the horn. Moreover, the People presented no proof to establish that the horn was not blown to warn a person or an animal of danger as required by statute. (See Traffic Regulations of City of NY, § 151.)
Accordingly, as there was no proper basis for the charges upon which the complaining witness was arresting defendant (i.e., horn blowing), there can be no legal support for the charge of resisting arrest.
The remaining charge on which defendant was convicted is that of criminal impersonation (Penal Law, § 190.25). The conviction was based on two separate statements made *145 by the defendant which are set forth at the outset of this opinion.
Section 190.25 of the Penal Law, as relevant, provides that a person is guilty of criminal impersonation when he impersonates “another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another”.
The People have argued that the defendant’s statements were made in order to avoid receiving a summons and thus to obtain a benefit. Surely, the first statement which was made just prior to the defendant telling complaining witness to “Go to Hell” can hardly be said to have been made with the intention of influencing complainant to give defendant a benefit. Indeed, rude and abrasive comments to peace officers are indicative of the opposite intention. They are usually meant to challenge and demean the peace officer. The People argue, however, that defendant’s first and second statements together are enough for a jury to have found that defendant was pretending to be a “brother police officer” in order to avoid receiving a ticket. The court does not agree. The People offered no evidence to show that these statements by defendant were any more than assertions of the truth. There is no proof that defendant was not a peace officer and was not entitled to carry a badge as such. (Indeed, although the record does not make it entirely clear, it is possible that defendant, as a licensed detective at Yonkers Raceway, was a peace officer and was also authorized to carry a badge.) (See CPL 2.10, subd 29.)
There are few reported cases concerning criminal impersonation. From a reading of the section, however, it appears to me that impersonation by its nature requires an intentional falsehood. If one peace officer who is about to be arrested by another peace officer asserts that he is a peace officer, there is no criminal impersonation involved. And without proof, under the circumstances here presented, that this defendant was not a brother peace officer, the People have failed in sustaining their burden of proof.
Accordingly, the defendant’s motion for a trial order of dismissal is granted and the jury’s verdict of guilty of the charges of criminal impersonation (Penal Law, § 190.25) and resisting arrest (Penal Law, § 205.30) is set aside.