**Scott PASTRE, Plaintiff,**

**v.**

**Thomas L. WEBER, Individually and as a New York State Police Officer, Dover Plains, New York and Robert Pineau, Individually and as a New York State Police Officer, Dover Plains, New York, Defendants.**

**No. 83 Civ. 7827 (WK).**

United States District Court, S.D. New York.

July 26, 1988.

■

---

See also 717 F.Supp. 992.

Daniel H. Weiner, Sean F. Reilly, Hughes, Hubbard & Reed, New York City, for plaintiff.

Frederic L. Lieberman, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Scott Pastre has brought the instant action under 42 U.S.C. § 1983 and under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution against two New York State Troopers, Thomas L. Weber and Robert E. Pineau ("defendants"), on claims of "unlawful arrest" and "excessive use of force". He also alleges pendent state claims of assault and battery, infliction of emotional distress, negligence and gross negligence. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56(b). For the reasons stated below, we grant summary judgment for defendants on the claim of unlawful arrest, but deny the motion with respect to the remaining claims.

## FACTS

The defendants were working an 11 p.m. to 7 a.m. shift on October 28 to 29, 1982, in the area of Amenia, New York. Sometime prior to 2:00 a.m. they parked in the "Four Brothers" restaurant parking lot in Amenia. From this vantage point they could observe, while completing some paperwork, the traffic light at the intersection of Route 22 and Routes 44–343.

At about 2:00 a.m. the defendants observed a grey station wagon proceeding eastbound on Routes 44–343 and approaching the traffic light, which was red at the time. The station wagon passed a vehicle stopped at the red light and went through the red light at approximately 30 m.p.h. Defendants began to pursue the station wagon, and Trooper Weber immediately activated the flashing emergency roof lights and the siren on the police car. They

chased the station wagon for approximately two miles on Routes 44–343, a dark curving road, at speeds in excess of 70 m.p.h. According to the defendants the station wagon entered the westbound lane on numerous occasions (Weber Affid. ¶ 15; Pineau Affid. ¶ 10–11). Trooper Pineau also asserted that the station wagon, on several occasions, crossed the double yellow pavement markings and drove onto the right shoulder (Pineau Affid. ¶ 11).

The station wagon attempted a left turn onto Sharon Station Road, at its intersection with Routes 44–343, but failed. Instead it skidded into the concrete curbing at the northeast corner of the intersection. The defendants thus closed the gap between their car and the station wagon. The police car entered and passed through the intersection as the station wagon backed off the curb. The station wagon then headed north on Sharon Station Road and the police car continued in pursuit for one mile at very high speed. The station wagon struck the embankment and came to a halt on the west side of Sharon Station Road.

What happened after this point is the core of the dispute in this lawsuit. We shall first detail the defendants' version, as follows:

The defendants left the police car and approached the station wagon with their batons out. Trooper Weber twice ordered the plaintiff, who had been driving, to get out. The plaintiff ignored the order and attempted to restart the engine. Weber tried to open the station wagon door, and on failing to do this, broke the glass of the driver's window with his baton. He then opened the door, and ordered plaintiff out of the car. Plaintiff did not comply, but instead lay on the seat with his head closer to the passenger's side and kicked Trooper Weber, and yelled that Weber had injured his head. While Pineau was trying to remove the passengers from the car he observed Weber struggling with the plaintiff. Weber eventually pulled the plaintiff from the car despite his struggles. Almost simultaneously Pineau ordered the passengers to get out of the car, and when he failed to get the door open he broke the passenger-side window with his baton and removed the passengers. Once plaintiff was outside the station wagon, Weber told him to lie down on the ground and informed him that he was under arrest. Plaintiff continued to struggle; Weber then twice hit plaintiff in the shins with his baton in an attempt to bring him to the ground to handcuff and place him under arrest. Plaintiff then ran into the bushes on the east side of the road from which Weber had to extract him. Weber then "placed" him on the ground and Pineau assisted in subduing and handcuffing him.

Plaintiff's version, which we shall now state, is quite different: After approaching the station wagon, Weber gave no order to the plaintiff to exit nor tried to open the unlocked door before he smashed the driver-side window. Weber struck plaintiff across the head, and then opened the car door and dragged plaintiff out by the arm and waist. During the thirty to forty-five second period before plaintiff was informed that he was under arrest and was handcuffed, a melee ensued. Weber threw the plaintiff on the ground and clubbed him on top of his head. As plaintiff tried to get up, Weber hit him again, though this time on the back of the head. Weber then struck the plaintiff repeatedly on his upraised arms as he shielded his head from further blows. Plaintiff was also pushed or hit so that he fell into the bushes, and was kicked in the groin by Trooper Pineau after being told to lie on his stomach. Plaintiff rolled onto his stomach and was handcuffed.

Plaintiff was charged with (1) driving while intoxicated, New York Vehicle & Traffic Law § 1192, subd. 3; (2) passing a red light, New York Vehicle & Traffic Law § 1111, subd. d, par. 1; (3) speeding, New York Vehicle & Traffic Law § 1180, subd. d; (4) driving left of pavement marks, New York Vehicle & Traffic Law § 1126, subd. a, and (5) resisting arrest, New York Penal Law § 205.30. *See* Exhibit GG to Defendants's Statement Pursuant to Local Civil Rule 3(g). The Criminal Information filed by Defendant Weber regarding the fifth

charge, resisting arrest, alleged that plaintiff:

did intentionally attempt to prevent the complainant, a uniform trooper with the New York State Police, from effecting an authorized arrest of himself in that while complainant was effecting an arrest for Driving While Intoxicated in violation of Section 1192–3 of the Vehicle & Traffic Law of the State of New York and several traffic infractions under the same law, defendant did attempt to kick the complainant several times before said complainant could place him in custody, all contrary to the provisions of the statute in such case made and provided.

Exhibit V to Defendants's Statement Pursuant to Local Civil Rule 3(g). On April 28 and May 4, 1983, plaintiff went to trial on the resisting arrest charge and the various traffic infractions before the Town Justice Court of Amenia, New York. Plaintiff was represented by counsel and testified in his own defense. His testimony contradicted that of the police officials (the defendants here), and was consistent with his factual allegations in this case.

Plaintiff was found guilty of resisting arrest and of the traffic violations with which he was charged, with two exceptions: he was found guilty of "driving while ability impaired," New York Vehicle & Traffic Law § 1192, subd. 1, a lesser offense than "driving while intoxicated," and he was found not guilty of driving left of the pavement marks. *See* Exhibit HH to Defendants's Statement Pursuant to Local Civil Rule 3(g). Plaintiff was fined $100 and given a conditional discharge.

Plaintiff's conviction for resisting arrest was affirmed by the New York Supreme Court Appellate Term (9th and 10th Judicial districts) on June 4, 1984, over the dissent of one justice, who opined that:

The totality of the evidence did not establish beyond a reasonable doubt that the defendant was guilty of resisting arrest. The officer testified he did not know how the defendant was injured, but it would appear he was probably struck by the officer's baton in addition to flying glass, and while still in the car was yelling to

the officer "You've got me." In the melee that followed, it would seem that defendant's actions reflect conduct that was defensive and more consistent with self-protection against further injury, than resisting arrest.

Exhibit II to Defendants's Statement Pursuant to Local Civil Rule 3(g).

## DISCUSSION

Defendants' motion for summary judgment is based on three grounds: first, that the plaintiff is barred by principles of *res judicata* and collateral estoppel from re-litigating issues of fact upon which his state convictions were based; second, that the actions of defendants Weber and Pineau when arresting and subduing plaintiff were directly caused by his conduct and were necessary, reasonable, authorized by New York Law and consistent with the policies and procedures of the Division; third, that the defendants are entitled to qualified immunity from liability as the circumstances were such that they could not have foreseen that their actions could be found to be unreasonable. Defendants' second and third grounds are based on the premise that, even in the absence of collateral estoppel, the material facts are undisputed. We find, however, that there are disputed issues of material fact, and that defendants only possible route to summary judgment on any of the claims is by way of collateral estoppel.

Judgments rendered by state courts are entitled to the same full faith and credit in federal courts as they would receive in the courts of the state in which they were rendered. 28 U.S.C. § 1738. Furthermore, "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they [would] enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City School District Board of Education* (1984), 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56. This rule also applies where the prior state court proceedings are criminal, *Haring v. Prosise* (1983), 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595.

Under New York law a party is collaterally estopped from relitigating an issue in a second proceeding only if:

the issue as to which preclusion is sought [is] identical with the issue decided in the prior proceeding, ... the issue ... [was] necessarily decided in the prior proceeding, and that the litigant who will be precluded in the present proceeding ... had a full and fair opportunity to litigate the issue in the prior proceeding.

*Capital Telephone Co. v. Pattersonville Telephone Co.* (1982), 56 N.Y.2d 11, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463.

Plaintiff does not dispute the fact that he had a full and fair opportunity to litigate in the state proceeding any issues presented by this action as to which collateral estoppel might apply. Therefore, our task is to identify issues before us which are "identical" to issues "necessarily decided" in the state trial.

■ As an initial matter, plaintiff's convictions for driving while ability impaired, driving through a red light and speeding, preclude him from disproving such conduct in this action. Such traffic infractions should be given collateral estoppel effect, notwithstanding their status as non-criminal violations, in a later civil action against the officers involved in citing the infraction. *Gramatan Home Investors Corp. v. Lopez* (1979) 46 N.Y.2d 481, 485–86, 414 N.Y.S.2d 308, 310–11, 386 N.E.2d 1328, 1330–31. In any event, counsel for plaintiff made clear at oral argument that they will not relitigate those issues.

■ We turn to the implications of plaintiff's conviction for resisting arrest. In the first instance, this conviction has full *res judicata* effect with respect to plaintiff's claim of unlawful arrest. Under New York law, a lawful arrest is a pre-requisite for any conviction for resisting arrest. *People v. Stevenson* (1972), 31 N.Y.2d 108, 111, 335 N.Y.S.2d 52, 56, 286 N.E.2d 445, 449.

The issue of the lawfulness of the arrest was thus "necessarily decided" against plaintiff in the state trial, and he cannot re-litigate that issue here.

■ However, with respect to the claims for excessive use of force, assault and battery, infliction of emotional distress, negligence and gross negligence, we hold that the resisting arrest conviction has only partial collateral estoppel effect.[1] This conclusion is compelled by several circumstances. First, plaintiff's charge of resisting arrest was predicated upon the criminal information filed by Trooper Weber. Under New York law, in order to convict a defendant for an offense charged in a criminal information, the People must prove the conduct alleged in that information. *People v. Harper* (1975), 37 N.Y.2d 96, 99–100, 371 N.Y.S.2d 467, 470, 332 N.E.2d 336, 339; *People v. McGuire* (1959), 5 N.Y.2d 523, 525–26, 186 N.Y.S.2d 250, 252–53, 158 N.E.2d 830, 832–33; *People v. Multari* (1987 Albany County Ct.), 135 Misc.2d 913; 517 N.Y.S.2d 374, 378. The criminal information filed by Weber alleged that Scott Pastre attempted to kick him several times before he could be placed in custody. Defendants, in both their trial testimony and their affidavits in this action, asserted that these attempted kicks occurred before Trooper Weber was able to remove the plaintiff from the car. We therefore will presume that the resisting arrest conviction was predicated on the kicks by plaintiff while still inside the car, and not on any conduct after he was removed from the car.

Second, while defendants are correct that the issue of excessive force on the defendants' part was litigated in the state trial by way of plaintiff's defense of justification, it follows from the discussion in the preceding paragraph that the justification issue is "identical" with the issue raised in this action only up to the point at which plaintiff kicked defendant Weber. As so limited, the issue of whether the kick was

---

1. In arguing that the resisting arrest conviction has no collateral estoppel effect with respect to the excessive force claim, plaintiff relies heavily on *Hernandez v. City of Los Angeles* (9th Cir. 1980), 624 F.2d 935. Although this case indeed stands for that very proposition, it was decided before *Migra, supra,* which commands us to analyze the state law implications of the prior finding in order to determine the scope of its collateral estoppel effect in a later § 1983 action.

preceded by excessive force was "necessarily decided" in the state trial. Under New York law, justification is an ordinary as opposed to an affirmative defense, and thus once it was raised in any way by the defendant (here the plaintiff) in the state trial, the People had the burden of disproving beyond a reasonable doubt the existence of such justification. *People v. Mc-Manus* (1986), 67 N.Y.2d 541, 546–47, 505 N.Y.S.2d 43, 48, 496 N.E.2d 202, 207. Plaintiff is thus precluded from relitigating in this action the issues of whether Weber employed excessive force, assaulted plaintiff, or was negligent toward plaintiff, prior to the time that plaintiff kicked Weber.

■ Nonetheless, most of plaintiff's present allegations about the excessive force employed by the defendants concern events which occurred after he had been dragged out of the car, and thus after he had kicked Weber. Indeed, although the defendants contend that the pre- and post-kick events constitute a single occurrence during which they did not violate their legitimate authority, they concede that it is "technically correct" that the issue of excessive force after plaintiff kicked Trooper Weber may not have been necessarily decided by the trial court. (Defendants' Reply Memorandum of Law at p. 16).

As one court has observed, "a lawful arrest can be accompanied with excessive force," *see Williams v. Liberty* (7th Cir. 1972), 461 F.2d 325, and, as a corollary, a conviction for resisting arrest does not preclude the possibility of subsequent improper conduct by the police officers involved in the arrest. Plaintiff is not precluded from asserting and proving that such subsequent improper conduct occurred. And as we noted above, genuine issues of material fact exist as to the exact pattern of the events following the plaintiff's removal from the car such that summary judgment cannot be granted on any of the claims insofar as they relate to those events.

In holding that plaintiff is precluded from re-litigating the pre-kick events, we do not rule at this time that his proof or testimony at trial will be curtailed in any way. Rather, we are only ruling that those events will not be examined by us as a possible basis for liability in this action.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part.

SO ORDERED.