83 N.Y.2d 192 (1994)
630 N.E.2d 641
608 N.Y.S.2d 945
The People of the State of New York, Respondent,
v.
Edward Voliton, Appellant.
Court of Appeals of the State of New York.
Argued January 6, 1994.
Decided February 22, 1994.
Monroe A. Semble and John F. Middlemiss, Jr., Riverhead, for appellant.
James M. Catterson, Jr., District Attorney of Suffolk County, Riverhead (Karen Petterson of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA and CIPARICK concur with Judge LEVINE; Judge SMITH dissents and votes to reverse in a separate opinion; Judge TITONE taking no part.
*194 LEVINE, J.
After a jury trial, defendant was convicted of two counts of assault in the second degree, for causing physical injuries to two officers of the Suffolk County Police Department with intent to prevent each of them from performing a lawful duty; assault, third degree, for recklessly causing physical injury to one of the officers; and resisting arrest.
The charges against defendant arose from an incident which began about 3:00 A.M. November 18, 1987 on Davidson Street in Wyandanch. While patrolling in a marked police car, uniformed Suffolk County Police Officers James Faughnan and Bryan Carty observed a red Hyundai automobile parked partly on the street and partly on the dirt yard of an abandoned house which they believed to be the site of drug and prostitution activities. The officers' version of what transpired was as follows. They pulled alongside the Hyundai and asked defendant, sitting in the driver's seat, for his license and registration and an explanation for his presence at that location. Defendant responded by rolling his window up, making an obscene hand gesture and slowly moving his vehicle forward. The officers then moved the patrol car at an angle to block defendant's forward movement and exited to position themselves on each side of defendant's vehicle. Because it was dark, raining and the windows of the Hyundai were tinted, the officers had difficulty seeing inside defendant's vehicle. But when they saw defendant appear to be reaching down for something below the passenger seat, the officer near the passenger's side broke the side window with his flashlight and ordered defendant at gunpoint to come out of his vehicle. Defendant then wildly maneuvered his car to extricate himself from the situation and eventually did so, but not before both officers were injured by contact with the Hyundai and three shots were fired by the police at defendant's car, one of which hit defendant in the elbow. After a high-speed chase for several miles, culminating at a dead-end street, defendant fled from his vehicle by foot and was then apprehended by Officer Faughnan and placed in handcuffs after a physical struggle in which he kicked and punched both officers.
*195 The Appellate Division vacated the two assault, second degree, convictions and dismissed those charges (190 AD2d 764). Relying on our holding in People v May (81 N.Y.2d 725) (decided after defendant's trial), the Appellate Division concluded that the police officers were engaged in an unlawful seizure of defendant when they detained him by blocking his vehicle and displaying their weapons without having any reasonable suspicion that criminal activity was afoot at the time. The illegality of the seizure, therefore, negated a necessary element of the assault, second degree, convictions, i.e., that the defendant's acts against the police in evading detention were committed "[w]ith intent to prevent [them] from performing a lawful duty" (Penal Law § 120.05 [3] [emphasis supplied]). Because the illegality of the seizure of defendant by the police had not been raised at the trial level, however, the Appellate Division invoked its interest of justice discretionary authority to vacate and dismiss the felony assault convictions (see, CPL 470.15 [3]). The Court, however, affirmed the convictions for reckless assault, third degree, and resisting arrest. A Judge of this Court granted defendant leave to appeal. We now affirm.
On this appeal from the affirmance of his assault, third degree, and resisting arrest convictions, defendant urges only two points. The first of his grounds for reversal is that substantive due process bars convicting him for actions in direct response to the "grossly" illegal seizure of his person by the police.[*] As defendant concedes, however, this constitutional objection was raised for the first time before the Appellate Division and, thus, is beyond our power to review unless it falls within the narrow class of cases in which we have held preservation by timely objection is unnecessary.
Exceptions to the preservation rule have been limited to errors going to the very organization of the court or at such basic variance with the mode of procedure mandated by law that they impair the essential validity of the criminal proceedings (see, People v Patterson, 39 N.Y.2d 288, 295-296; see also, People v Michael, 48 N.Y.2d 1, 6). We have generally applied the preservation rule to due process objections (see, e.g., People v Iannelli, 69 N.Y.2d 684, 685; People v Barry A., 40 N.Y.2d 991, 993). Notably, in People v Patterson (53 N.Y.2d 829, 831) we *196 held that an objection based upon an unlawful seizure of the defendant's person was fully subject to the timely preservation requirement. Defendant's challenge to the constitutionality of his conviction based on the unlawful seizure of his person by the police here is not distinguishable in kind from that raised by the defendant in People v Patterson (supra) as to whether some exception to the preservation rule applies (see also, People v Dancey, 57 N.Y.2d 1033, 1035; People v Martin, 50 N.Y.2d 1029, 1031). Accordingly, we find this claim unpreserved for our review.
Defendant's remaining point is addressed only to his resisting arrest conviction. He argues that because the Appellate Division expressly found that the acts of the police in detaining and attempting to seize him "were unlawful at the time the alleged injuries [to the police] were inflicted" (190 AD2d 764, 767, supra), defendant's arrest by the police was not "authorized", thus negating an essential element of the crime of resisting arrest (see, Penal Law § 205.30; People v Peacock, 68 N.Y.2d 675, 677). We disagree.
The trial court charged the jury that, to find defendant guilty of resisting arrest, it was required to find beyond a reasonable doubt, inter alia, that defendant "punched and kicked" the two officers, knowing that they were police officers, and in doing so intentionally attempted to prevent the officers from effecting an authorized arrest. Both officers testified that the only punching and kicking by defendant occurred well after the initial incident on Davidson Street and defendant's flight therefrom, when Officer Faughnan apprehended him on foot and both officers were attempting to subdue and handcuff him. Although defendant gave a different version of his and the officers' conduct when he was finally apprehended, there is no reasonable view of the evidence that any punching or kicking by him occurred at any earlier point in the entire incident.
Similarly, under the trial court's very specific fact-related instructions to the jury in submitting assault, third degree, as a lesser included offense to one of the other counts of the indictment, the verdict convicting defendant of assault in the third degree was necessarily based upon the jury's finding that Officer Carty was injured by contact with defendant's car during the initial Davidson Street encounter as a result of defendant's reckless conduct in maneuvering his automobile to avoid being detained by the officers. Defendant has not *197 disputed the legal sufficiency of the People's evidence to support that finding.
Moreover, there is no issue properly before this Court of defendant's justification for his use of force in this initial encounter with the police. Penal Law § 35.27 provides that "[a] person may not use physical force to resist an arrest, whether authorized or unauthorized, which is being effected or attempted by a police officer * * * when it would reasonably appear that the latter is a police officer" (emphasis supplied). Defendant did not timely request a jury instruction that he would have been justified in using physical force in self-defense against any excessive force employed by the police in attempting to detain him (cf., People v Stevenson, 31 N.Y.2d 108, 112) and the trial court's refusal to entertain defendant's belated request to charge surely cannot be viewed as an abuse of discretion as a matter of law. Therefore, defendant's commission of an assault, third degree, against Officer Carty during that initial encounter furnished the predicate for his subsequent authorized arrest by Officer Faughnan. Accordingly, defendant's conviction for resisting that arrest was properly affirmed by the Appellate Division.
The order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
Because the trial in this case was fundamentally flawed, I dissent and would reverse the order of the Appellate Division. First, defendant was denied the opportunity to have a jury consider his position that his actions were justified when the trial court declined to give a charge on justification. Second, defendant's argument that his convictions violate due process should be reviewed by this Court even in the absence of preservation. Third, he was entitled to have a jury consider the charge of assault in the third degree with the knowledge that the conduct of the police was illegal. Fourth, no basis existed for a conviction for resisting arrest.

I
Defendant's conviction, after a jury trial, of two counts of assault in the second degree, assault in the third degree, and resisting arrest, stemmed from an altercation with two police officers as he sat in his car with a female companion, and in which the police officers were allegedly injured. The Appellate Division vacated the conviction of two counts of assault in the second degree and the sentences imposed thereon and dismissed those counts from the underlying indictment (190 AD2d 764). *198 The Court concluded that the police officers were "not acting lawfully at the time that they were allegedly injured," that they "had no right to demand that the defendant produce his driver's license and registration," and that they "had no right to detain or to arrest the defendant based upon his refusal to do so" (id., at 766). The Court concluded further that "the officers' efforts to detain, arrest, and later shoot the defendant were unlawful at the time the alleged injuries were inflicted" (id., at 767). Nevertheless, the Court affirmed the judgment of County Court insofar as it convicted defendant of assault in the third degree and resisting arrest (see, 190 AD2d 764, supra). A Judge of this Court granted leave to appeal (81 N.Y.2d 978).

II
The facts demonstrate, as the Appellate Division concluded, that the conduct of the police in this case was unlawful. On November 18, 1987, at approximately 3:00 A.M., as Police Officers James Faughnan and Bryan Carty drove through the Town of Wyandanch, Suffolk County, on patrol, they observed defendant and a female companion seated in a red Hyundai vehicle, with the engine running and the headlights on. Based on the belief that the location was a "high drug area," and that defendant's car was near a "big hangout for drugs and prostitution," the officers pulled up alongside the vehicle and demanded the license and registration of defendant, who was in the driver's seat. Defendant ignored the officers' demand, gestured to one of them with his middle finger, and began to drive away. The officers then used their vehicle to block defendant's path, exited their patrol car and approached defendant's car. Officer Carty approached on the driver's side while Officer Faughnan went to the passenger side, brandishing a revolver in his left hand and a flashlight in his right hand. The officers permitted the female passenger to exit the car and leave the area. Defendant reached toward the passenger side of his vehicle. Observing this movement, Officer Carty yelled to Officer Faughnan, who smashed the passenger side window with his flashlight. In endeavoring to prevent his arrest by maneuvering his car out of an obstruction created by the police, defendant thereafter responded to a continuous, escalating encounter precipitated by the officers' unlawful conduct. His reactions were immediate, spontaneous, and proportionate to the officer's use of excessive force. Given the *199 display of violence by one of the officers, defendant understandably did not comply with the commands to get out of his car. Instead, he attempted to escape the precarious situation by maneuvering his car out of the impasse. In so doing, his car collided with Officer Carty, slightly injuring him. The officers responded by firing three shots into defendant's car. One of the bullets penetrated defendant's arm. Obviously fearing for his life at this point, defendant managed to depart the area and, in so doing, bumped into Officer Faughnan with his car and knocked him to the ground, causing injury. The two officers returned to their patrol car and pursued defendant. At some point defendant exited his vehicle and fled on foot. After a brief chase, defendant was handcuffed and arrested. A search of defendant's car revealed no weapons or drugs.

III
First, defendant was denied the opportunity to have the jury consider his contention that his actions were justified. The trial court refused to instruct the jury on the defense of justification. Prior to the court's charge to the jury, defendant requested that the court adapt Penal Law § 35.30 ("Justification; use of physical force in making an arrest or in preventing an escape") to the facts of this case. Specifically, the record indicates that the following colloquy took place:
"[DEFENSE COUNSEL]: What I'm asking is that the Court encompass in its charge portions of Section 35.30.
"THE COURT: 35.30 of the Criminal Procedure Law?
"[DEFENSE COUNSEL]: Of the Penal Law, applicable sections specifically relating to force, the use of deadly force, and I'm certain the Court can interpret that as it applies in this instance.
"THE COURT: That has five subdivisions. Are you referring to a specific one? Do you want to look at it * * *?
"[DEFENSE COUNSEL]: I'm looking at it right now.
"[LAW SECRETARY TO TRIAL JUDGE]: Do you want the entire installment charged?
"THE COURT: There are certain portions of the section that deal with private people.
"[DEFENSE COUNSEL]: No. I'm talking primarily 1 *200 and the subdivisions thereof; 2 and 3 I don't even think are applicable. I'm speaking too quickly. Yes, Section 1.
"[LAW SECRETARY]: 1 and 1 (a).
"[DEFENSE COUNSEL]: 35.30 Sub 1 (a), and you can't take portions. It's not fully disclosing. I'm trying to cover the variations encompassed in the statute.
"[LAW SECRETARY]: So the entire section 1?
"[DEFENSE COUNSEL]: Entire section 1, ending with Sub (c) or whatever you want to call it. I do not feel that Sections 2 and 3 are applicable or have any bearing on the facts here.
"[LAW SECRETARY]: Can I have a question off the record?
"THE COURT: Off the record. (Discussion held off the record)
"THE COURT: Since Section 35.30 does not appear to the Court to apply in the instant case, the Court denies the request."
After the jury charge, defense counsel specifically requested a charge on justification. The following colloquy took place:
"THE COURT: Any exceptions or requests * * *.
"[DEFENSE COUNSEL]: If your Honor please, I had not gone into this before. This is an element here which was not charged. That is with respect to the self-protection, self-defense, with respect to the actions of the defendant.
"THE COURT: You mean justification?
"[DEFENSE COUNSEL]: Justification.
"THE COURT: It wasn't requested.
"[DEFENSE COUNSEL]: I'm saying it was not requested. In sitting here I thought that would be encompassed in the charge.
"THE COURT: Only if the charge is requested.
"[DEFENSE COUNSEL]: Would your Honor consider, even at this late time, offering that charge on that question?
"[PROSECUTOR]: Judge, I would object. I didn't have a chance to sum up on it.
"THE COURT: That's the problem.

*201 "[DEFENSE COUNSEL]: My error. I had thought that it was going to be encompassed in the charge.
"THE COURT: It's not a standard charge. When I read the proposed charges to you, I did not include justification.
"[DEFENSE COUNSEL]: I am aware of that."
Each time, the trial court denied the request to charge.

IV
Second, on this appeal, defendant argues, as he did at the Appellate Division, that his due process rights under both the Federal and State Constitutions were violated by his convictions following an illegal seizure of his person by the police. This argument, while not specifically made at the trial level, is related to the contention and request for jury instructions on whether his actions were justified. The argument was made in the Appellate Division.
This case comes within the general rule that no preservation is necessary where the claimed defect goes to "the organization of the court or the mode of proceedings proscribed [sic] by law" (see, People v Patterson, 39 N.Y.2d 288, 295). The Patterson Court also stated that there were, occasionally, broader expressions of this rule. Thus, the Patterson Court stated:
"Thus, the rule has come down to us that where the court had no jurisdiction, or where the right to trial by jury was disregarded, or where there was a fundamental, nonwaivable defect in the mode of procedure, then an appellate court must reverse, even though the question was not formally raised below * * *.
"This traditionally limited exception has, on occasion, been given broader expression." (People v Patterson, 39 NY2d, at 295, supra.)
As in Patterson the claimed error here "goes to the essential validity of the proceedings" (39 NY2d, at 296), and should be reviewed by this Court (compare, Cohen and Karger, Powers of the New York Court of Appeals § 55 [referring to appeals in civil cases  "failure to urge the constitutional question in the court of original instance is not fatal to the appeal, so long as the question was properly presented to the Appellate Division *202 and necessarily involved in its decision"]; see also, 2 Newman, New York Appellate Practice § 13.08 [3] [d]).
The facts in the cases cited by the majority as precluding a review of a due process claim because of an absence of preservation do not involve unlawful police conduct. In People v Iannelli (69 N.Y.2d 684), the defendant did not raise the issue that the statute prohibiting aggravated disorderly conduct was unconstitutional until after he was convicted. In People v Barry A. (40 N.Y.2d 991), this Court refused to entertain an argument that a youthful offender statute was unconstitutional because it was not raised until an appeal was taken. In People v Patterson (53 N.Y.2d 829), both the trial court and the Appellate Division found that statements made to the police were voluntarily made and were not in violation of defendant's right against self-incrimination. This Court then refused to hear a challenge, made on appeal, that those statements were in violation of defendant's right to be secure in his person. In no sense do these cases stand for the proposition that a claimed due process violation resulting from illegal police conduct, and defendant's shooting and incarceration, is beyond this Court's power to review.
Third, defendant was entitled to have the jury consider the charge of assault in the third degree with the knowledge that defendant's actions were in response to illegal police conduct. Fundamental fairness requires that this case be presented to a jury not on a theory of proper police conduct but in terms of the unlawful police action found by the Appellate Division.
In its instruction to the jury on the charge of assault in the third degree, the trial court included the following five elements of that crime:
1. That on November 18, 1987, the defendant revved the motor of his car and moved it, causing it to slide into Bryan Carty, a police officer;
2. That at the time he did so, defendant was aware of a substantial and unjustifiable risk;
3. That the defendant consciously disregarded a substantial and unjustifiable risk of physical injury;
4. That the defendant's conscious disregard of the risk was a gross deviation from the standard of conduct that a reasonable person would observe in that situation;
5. That defendant's act caused serious physical injury to Bryan Carty.
In determining whether defendant's conduct under the circumstances *203 was a gross deviation from the conduct of a reasonable person, the jury should have been instructed that the conduct of the police officers was illegal. That fact bore on the reasonableness of the defendant's conduct.
Fourth, no basis exists for a conviction for resisting arrest. The majority attempts to limit that conviction to the time after the chase when defendant was caught and allegedly struggled with the officers (see, majority opn, at 196). However, this was not the limitation on which the prosecution tried the case. According to the record before the Court, the prosecutor's summation included the following:
"I submit to you, ladies and gentlemen, that from the time he took off at the scene of the incident, 10 Davidson Avenue [sic], all the way until the time he was apprehended, that's resisting. Driving away from police officers, shutting off the lights, traveling over several streets, getting to his house, and then at his house, jumping two fences, running around the house and trying to flee from the police officers, that's resisting.
"Once they actually have him in their hands, he kicks and punches. That all constitutes Resisting Arrest."
The charge of resisting arrest required the People to prove that defendant intentionally prevented or attempted to prevent a police officer "from effecting an authorized arrest" (Penal Law § 205.30). Here, no probable cause existed for the police to effect an arrest. As the Appellate Division concluded, the police conduct was unlawful.
On facts similar to those presented in this case, this Court concluded that the police had no reasonable ground to believe that the defendant had committed, was committing or was about to commit a crime, no probable cause existed to authorize the defendant's arrest, and, therefore, the defendant could not be guilty of resisting arrest (see, People v Peacock, 68 N.Y.2d 675). In that case, the defendant was charged with resisting arrest and harassment. According to the testimony of the arresting officer, the defendant was observed arguing with another individual and crying. When the officer approached the defendant and attempted to detain her, she struck him in the arm. The Court held that since there was no probable cause for defendant's arrest, defendant could not be guilty of resisting arrest (id., at 677). The Court explained further that *204 Penal Law § 35.27 "is concerned with the defense of justification and does not amend Penal Law § 205.30 to make resistance to an unauthorized arrest an offense" (id., at 677).
Here, too, there was no probable cause for defendant's arrest. The police officers had no basis to believe that defendant was committing, had committed or was about to commit an offense. Defendant was merely sitting with a female companion in a car he had recently purchased when the unlawful conduct of the police that led to his being shot and spending three years in prison ensued. It is inconsistent for this Court, as it was for the Appellate Division, to sustain a charge of resisting arrest in the face of the conclusion that the police officers violated the law.
The order of the Appellate Division should be reversed.
Order affirmed.
NOTES
[*] Contrary to the position of the dissent, defendant does not claim on this appeal that there was any constitutional flaw in the conduct of the trial itself.