Benny CURRY, Plaintiff–Counter–Defendant–Appellant,

v.

CITY OF SYRACUSE, Defendant–Counter–Claimant–Appellee,

Chad Lynch, Individually and as a Police Officer for the City of Syracuse, Defendant–Counter–Claimant–Appellee,

John Doe or Does, Fictitious names and the real identities of these individuals who, upon information and belief, are Police Officers employed by the city of Syracuse whose real identities are not known as Police Officers and/or employees of the Syracuse Police Department, Defendant–Counter–Claimant–Appellee.

Docket No. 01–9211.

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 2002.

Decided Jan. 15, 2003.

Elmer Robert Keach, III, Albany, NY (Kenneth P. Ray, Utica, NY, of counsel), for Appellant.

Karen M. Richards, Office of the Corporation Counsel, City of Syracuse, Syracuse, NY (Terri Bright, Corporation Counsel, Syracuse, NY, Sheila M. Finn, Office of the Corporation Counsel, City of Syracuse, Syracuse, NY, of counsel), for Appellees.

Before: MESKILL, SACK and KATZMANN, Circuit Judges.

MESKILL, Circuit Judge.

Plaintiff-appellant Benny Curry (Curry) appeals from an order of the United States District Court for the Northern District of New York, Scullin, J., granting summary judgment in favor of defendants-appellees Chad Lynch (Lynch) and the City of Syracuse (Syracuse) on Curry's federal claims alleging unlawful use of excessive force and false arrest, and dismissing Curry's state law claims without prejudice. Federal question jurisdiction is proper because Curry has brought claims pursuant to the United States Constitution and 42 U.S.C. § 1983. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 as this is an appeal from a final judgment of the district court.

## BACKGROUND

At all times relevant to this case, Lynch was a police officer for the city of Syracuse. On September 10, 1997 at approximately 10:15 p.m., Lynch responded to a radio call from Officer Anthony Rossillo reporting shots fired in the area of Shonnard and Oswego Streets, which was known to Lynch as a high crime area. When Lynch arrived at the scene, Officer Rossillo indicated that the shots had come from the 300 block of Shonnard Street.

Lynch proceeded to the 300 block of Shonnard Street, where he saw a black male coming out of a yard in the area where the shots had been fired. The male, later identified as Curry, ran down Shonnard Street. Lynch followed in his police car, shouting out the window to Curry to stop. Lynch got out of his car and began to chase Curry on foot, continually ordering Curry to stop.

As Curry was attempting to climb over a fence, his shirt got caught. While Curry was stuck on the fence, Lynch's police flashlight hit Curry in the back of the knee. Curry testified at his deposition that he believed Lynch threw the flashlight at him, but that he did not actually see it happen. Lynch testified that he slipped on the wet ground and his flashlight slipped out of his hand and hit Curry.

Lynch pushed the fence over on top of Curry and tackled him, attempting to handcuff him. Lynch called for help. Lynch and Officer Michael Yarema each testified at depositions conducted in this case that Lynch used his radio to call for help. However, at Curry's parole revocation hearing, Lynch testified that he did not use his radio to call for help, but simply shouted instead, because he was using his radio to hit Curry.

When Officer Yarema responded to Lynch's call for help, he observed Lynch and Curry struggling on the ground and assisted Lynch in subduing Curry. Lynch testified at his deposition that Curry began hitting him while the two were on the ground. Lynch also testified that Curry reached for his sock, pulled something out of his sock and threw it away. Lynch testified that when Curry reached for his sock, he believed Curry might be reaching for a gun. Curry testified that he never reached for or removed anything from his sock, and that he never hit Lynch. Lynch ordered Curry to place his hands behind his back; Curry was attempting to crawl

away from Lynch and did not comply. Lynch hit Curry repeatedly in the head and elsewhere on his upper body with his police radio, possibly as many as ten times. Yarema also hit Curry. Finally, Curry was handcuffed and arrested.

Lynch testified that he returned to the scene of the struggle after Curry was under arrest and found a plastic bag containing crack cocaine. Lynch believed that this plastic bag was the object Curry had removed from his sock and thrown away during the struggle. Curry testified that he did not possess any illegal drugs on that night, that he did not remove anything from his sock, and that he did not throw anything away. Curry contends that the crack was planted at the scene after the fact to incriminate him.

Lynch did not suffer any injuries from the incident that required medical treatment. At his deposition, Lynch testified that he suffered bruising as a result of the incident. However, at Curry's parole revocation hearing, Lynch testified that he did not sustain any marks or injuries in the struggle. Curry was hospitalized with lacerations to his head and face and a ruptured patellar tendon in his left leg which required major surgery and several days in the hospital.

At the time of his arrest, Curry was on parole, and was subject to a curfew. When he arrived at Shonnard Street, Curry knew that it was past his curfew. Curry testified at his deposition that he ran from the police only because he did not want to be caught violating his curfew.

Curry was charged in New York state court with resisting arrest and possession of a controlled substance. A Violation of Release Report was also filed, charging Curry with (1) possession of a controlled substance, (2) violating his curfew, (3) threatening the safety and well-being of a police officer by resisting arrest, and (4) threatening the safety and well-being of a police officer by striking Lynch, all in violation of the conditions of Curry's parole.

The criminal charges against Curry were dismissed by a New York court, which found that Lynch's pursuit and "tackling" of Curry was unlawful. The Administrative Law Judge (ALJ) presiding over Curry's parole revocation hearing found that the first and third violations, *i.e.*, possession of a controlled substance and resisting arrest, had not been established by a preponderance of the evidence. However, Curry was found to have violated his parole by being out past his curfew and by striking Lynch.

Curry filed a complaint in district court setting forth the following claims: Counts One and Two, that the defendants had violated his constitutional right to be free from the use of excessive force; Counts Three and Four, that the defendants had violated his constitutional right to be free from false arrest; Count Five, that the defendants had failed to protect him from the use of excessive force and false arrest by Lynch; Count Six, that Syracuse had failed to adequately screen and supervise its employees; and five supplemental claims brought pursuant to state law for battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.[1] Syra-

---

1. The complaint named three defendants: the City of Syracuse, Lynch, and "John Doe" police officers and/or employees of the Syracuse Police Department. The complaint did not specify which claims were brought against which defendants. The nature of the claims and the record suggest that the failure

to protect claim was most likely brought against the John Doe officers, while the inadequate supervision claim was brought only against the City of Syracuse. The remaining claims could have been brought against any of the defendants. The district court apparently dismissed the claims against the John

cuse and Lynch moved for summary judgment. Curry conceded at oral argument before the district court that Count One was duplicative of Count Two, and Count Three was duplicative of Count Four; Counts One and Three were therefore dismissed. Count Five was dismissed, for reasons set forth by the district court at oral argument on the motion for summary judgment.[2] Curry withdrew Count Six, the claim against Syracuse. The district court thus considered only two claims on summary judgment: excessive force and false arrest. The district court found that the defendants were entitled to summary judgment on these claims and dismissed the remaining state law claims without prejudice. This appeal followed. On appeal, Curry challenges only the district court's grant of summary judgment on the false arrest and excessive force claims and does not challenge the dismissal of his other federal law claims.

## DISCUSSION

### I. Standard of Review

"As the analysis required for summary judgment is a legal one, we review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (internal citations and quotation marks omitted). The Supreme Court has stated that

> the issue of material fact required by Rule 56(c) to be present to entitle a

party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Further, "in ruling on a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (internal citations and quotation marks omitted). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir.1996).

### II. Claims Against the City of Syracuse

■ In the motion for summary judgment, the City of Syracuse argued that all claims against it should be dismissed because the complaint failed to set forth allegations which would satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for 42 U.S.C. § 1983 claims against a municipality. The district court did not address Curry's claims against Syracuse in its ruling. As noted above, Curry agreed at oral argument to

---

2. Counsel for Curry stated at oral argument that Count Five was brought against Michael Yarema for failure to intervene to protect Curry. The district court stated that Yarema had not been named as a defendant, and that it was too late to amend the complaint to include Yarema as a defendant. Accordingly, Count Five was dismissed.

Doe defendants prior to issuing its ruling on the motion for summary judgment; the record is not clear when or how this happened. Regardless, Curry has not appealed the dismissal of the John Doe defendants. He appeals only the "award of summary judgment to Defendants–Appellees City of Syracuse and Chad Lynch."

withdraw his claim for negligent hiring and supervision against Syracuse; Syracuse is not mentioned in any of the other counts of the complaint. Further, in his opposition to the motion for summary judgment, Curry stated: "The plaintiff withdraws his claim against the City of Syracuse as it relates to the provision of a municipal policy or practice tolerating police brutality." The only claims pursued by Curry on appeal are his claims of excessive force and false arrest, each brought pursuant to 42 U.S.C. § 1983. Under *Monell*, a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees. In order to impose § 1983 liability upon a municipality, a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992) (internal citations omitted). Outside of Count Six, the negligent hiring and supervision claim, which was withdrawn by Curry, the complaint is devoid of any allegations which would support liability under *Monell*. Therefore, the complaint was properly dismissed as against defendant-appellee Syracuse.[3]

### III. *Excessive Force Claim*

The district court found that no genuine issue of material fact existed as to whether the force used by Lynch was excessive, and granted summary judgment in favor of Lynch. The court further held that even if issues of fact did exist, Lynch was entitled to qualified immunity on this claim.

### A. *Collateral Estoppel Effect of Parole Violation Hearing*

At Curry's parole violation hearing, the ALJ found that the government had established by a preponderance of the evidence that Curry had violated his parole by being out past his curfew, and by striking Lynch. Specifically, the ALJ found as follows:

> On 9/10/97 Curry was in violation of his curfew. Officer Lynch responded to a call of shots fired. Arriving in the general area, he saw Curry [exit] an alley and take off running when he spotted the police car. The officer pursued by car, and by foot. Curry was stopped by a stockade fence, the officer plowing into the fence. Curry managed to free himself, and as he was rising, reached for something on his ankle, socks. He was tackled, at which point he repeatedly struck the officer, punched, etc. Officer Yarema arrived at the scene, saw Curry strike Lynch in the face. Eventually Curry, who had been told repeatedly to desist, was cuffed, pinned. Curry was struck with a radio in the chest, etc. Curry should not have assaulted the police officers.

Based on these findings, the ALJ recommended that Curry be incarcerated for a period of 18 months.

■ The district court accorded collateral estoppel effect to the ALJ's finding that Curry struck Lynch. Curry argues this was error. First, Curry argues that Lynch waived his right to assert collateral estoppel because he did not plead collateral estoppel as an affirmative defense, and only raised the issue for the first time in a supplemental memorandum filed after the motion for summary judgment was already pending.

■ Under Fed.R.Civ.P. 8(c), collateral estoppel, like *res judicata*, is an affirmative defense. As such, it normally must be

---

**3.** Accordingly, the remainder of this opinion will address Curry's claims solely as they re- late to defendant-appellee Lynch.

pled in a timely manner or it may be waived. *See, e.g., Pangburn v. Culbertson,* 200 F.3d 65, 68 n. 1 (2d Cir.1999). However, we have previously upheld a district court's dismissal of a case on collateral estoppel grounds even where collateral estoppel was not raised as an affirmative defense in the answer, but was raised by the district court *sua sponte,* without permitting the party against which it was asserted an opportunity to argue the issue. *See Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir.1998) ("Although the district court raised the issue of collateral estoppel *sua sponte,* this decision does not require reversal."). In so doing, we relied on "the strong public policy in economizing the use of judicial resources by avoiding relitigation." *Id.*

The Supreme Court has stated that the purpose of requiring collateral estoppel to be pled as an affirmative defense "is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate." *Blonder–Tongue Labs. v. Univ. Of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Here, Lynch raised the defense of collateral estoppel in the reply memorandum filed in response to Curry's opposition to the motion for summary judgment. Curry was given leave, and additional time, to file a sur-reply, in which Curry opposed the application of collateral estoppel to the ALJ's findings. The issue has been fully briefed by both parties on appeal. Thus, if the primary purpose of requiring collateral estoppel to be pled as an affirmative defense is providing notice and an opportunity to respond, that purpose was served in the instant case. In light of our decision in *Pfrommer,* and in light of the fact that Curry was not prejudiced by Lynch's failure to plead collateral estoppel in his answer, we hold that it was permissible for the district court to consider the collateral estoppel effect of the ALJ's findings on this case.

■ We have recently explained that [u]nder New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate.

*Fuchsberg & Fuchsberg v. Galizia,* 300 F.3d 105, 109 (2d Cir.2002) (internal citations and quotation marks omitted). "Additionally, the issue that was raised previously must be decisive of the present action." *LaFleur v. Whitman,* 300 F.3d 256, 271 (2d Cir.2002) (internal citation and quotation marks omitted).[4]

The issue of whether Curry struck Lynch is present in both this case and in the parole revocation hearing. The ALJ determined that the government had proven by a preponderance of the evidence at the parole revocation hearing that Curry had "threatened the well-being of Police Officer Chad Lynch by striking Officer Chad Lynch in the face and head with his fists." Curry's actions at the time of his arrest by Lynch were the primary subject of the testimony at the parole revocation hearing. Accordingly, the first require-

---

4. This additional requirement makes New York collateral estoppel law slightly different from federal collateral estoppel law. *See, e.g., Epperson v. Entm't Express,* 242 F.3d 100, 108 (2d Cir.2001) (applying federal collateral estoppel law). It appears that the district court erroneously applied the federal law of collat-

eral estoppel rather than New York law. *See Town of Deerfield v. FCC,* 992 F.2d 420, 429 (2d Cir.1993) ("To accord full faith and credit to a given state-court judgment, the court must at least apply that state's principles of res judicata and collateral estoppel.").

ment, that the issue being raised in the present case is identical to an issue that has already been decided in a previous adjudication, is satisfied.

■ The second requirement, that the party against whom estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior proceeding, has also been satisfied in this case. We have stated:

> In determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that "the various elements which make up the realities of litigation," should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir.2001) (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725 (1969)). Curry was represented by competent counsel at the parole revocation hearing. He had a strong "incentive and initiative to litigate", *Hickerson v. City of New York*, 146 F.3d 99, 109 (2d Cir.1998), this issue at the parole revocation hearing, because he knew that a finding by the ALJ that he had struck Lynch would almost certainly result in his incarceration. Curry had the opportunity to call witnesses, to testify himself, to present evidence, and to cross-examine Lynch and Officer Yarema; the fact that he chose not to testify, and that his counsel conducted only a limited cross-examination, is beside the point. The opportunity was clearly there. Accordingly, we find that Curry had a full and fair opportunity to litigate this issue before the ALJ.[5]

■ However, the final requirement under New York law, that the issue that was previously decided be "decisive" of the current action, is not met in this case. We have been unable to find any New York precedent construing the term "decisive" in this context. However, we believe that the most reasonable construction of this term is as follows: an issue is "decisive in the present action" if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint. A stricter definition of the term would render collateral estoppel virtually indistinguishable from *res judicata*; a broader definition would leave the additional requirement of "decisiveness" without meaning.

Applying this construction, we find that the issue of whether Curry struck Lynch is not decisive of the present action. Even if Curry struck Lynch, it is possible for Curry to prevail on his excessive force claim if he is able to show that Lynch used more force than was necessary to subdue him. Accordingly, the ALJ's finding that Curry struck Lynch is not decisive of any of Curry's claims, and the district court should not have accorded collateral estoppel effect to that finding.[6]

5. Curry contends that he has new evidence in the form of Officer Yarema's and Lynch's deposition testimony, which Curry contends contradicts the testimony given by each man at the parole revocation hearing. However, the contradictions cited by Curry relate to the issue of the force used by Lynch, not to the issue of Curry striking Lynch. Therefore, this evidence does not prevent application of collateral estoppel on the question of whether Curry struck Lynch.

6. Curry testified at his deposition that he did not strike Lynch, and that he "was in no condition to fight back" when Lynch struck him. This sworn testimony is sufficient to raise a genuine issue of fact as to whether Curry struck Lynch.

■ Even if we were to accord collateral estoppel effect to the ALJ's finding that Curry struck Lynch, that would not entitle Lynch to summary judgment on Curry's excessive force claim. The district court stated that

the starting point for the Court's analysis of Plaintiff's excessive force claim is whether, in light of the fact that while fleeing from Officer Lynch Plaintiff kept reaching for his socks and repeatedly punched Officer Lynch in the head and face with his fists while they were struggling, Officer Lynch's striking Plaintiff with his police radio in an attempt to subdue him constituted an excessive use of force. In light of Plaintiff's assault upon Officer Lynch and Officer Lynch's reasonable belief that Plaintiff was reaching for a gun, the Court finds that Officer Lynch used no more force than was necessary against Plaintiff.

The district court appears in this statement to have accorded collateral estoppel effect not only to the ALJ's finding that Curry struck Lynch, but also to the ALJ's mention in the course of his decision that Curry "reached for something on his ankle, socks." However, unlike the ALJ's finding that Curry struck Lynch, the ALJ's statement that Curry reached for his sock was not necessary to the outcome of the parole revocation hearing. Curry's parole could have been revoked because he struck Lynch, whether or not he reached for his sock. Thus, it would not be proper to accord preclusive effect to this aspect of the ALJ's decision.

■ Curry testified at his deposition that he did not reach for his sock at any time during the struggle with Lynch, and that he had no weapons on him at the time he was arrested. No weapons were found on Curry when he was taken into custody. Lynch testified at his deposition that he saw Curry reach for his sock several times. Lynch testified at the parole revocation hearing that he "was in fear for [his] life" because he thought Curry was reaching for a gun. In support of his motion for summary judgment, and on appeal, Lynch argues that because Lynch knew shots had been fired in the area and Curry reached for his sock, it was reasonable for Lynch to believe that Curry had a gun, and it was therefore reasonable for Lynch to use the amount of force he did to apprehend Curry. The district court, apparently taking the allegation that Curry reached for his sock as true, agreed that Lynch's belief that Curry was reaching for a gun was reasonable, and that Lynch was therefore justified in using force to subdue Curry. This was error.

■ It is well established that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Fischl v. Armitage*, 128 F.3d 50, 55–56 (2d Cir. 1997) (internal citations and quotation marks omitted). The record contains a sworn statement from Curry that he never reached for his sock. If a jury believed Curry's testimony, and disbelieved Lynch's on this point, the jury reasonably could find that it was not reasonable for Lynch to believe that Curry had a weapon.[7] If Lynch could not reasonably have believed that Curry had a weapon, then we cannot say that, as a matter of law, Lynch's hitting Curry in the head approximately ten times with his police radio was not excessive force. Summary judgment on this claim is not appropriate, as

---

7. This is particularly true because no weapon was found on Curry.

Curry's deposition testimony raises a genuine issue of material fact as to whether Curry reached for his sock.

## B. *Qualified Immunity*

 The district court found that even if a genuine issue of material fact existed as to whether the force used by Lynch was reasonable, Lynch was entitled to qualified immunity on Curry's excessive force claim.

> [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations and quotation marks omitted). Lynch does not dispute that the right to be free from the use of excessive force was "clearly established" at the time he arrested Curry. *See, e.g., Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir.2002) (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited"). The question then becomes whether Lynch's actions were "objectively reasonable" in light of the circumstances. The Supreme Court has held:

> The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle*, 297 F.3d at 122 (internal citations and quotation marks omitted). In this case it is impossible to "determine whether the officers reasonably believed that their force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.1999). *See also Robison v. Via*, 821 F.2d 913, 924 (2d Cir.1987) ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon.] Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

Genuine issues of material fact exist regarding whether Curry reached for his sock (and what inferences could reasonably be drawn from such an action) and whether Curry struck Lynch. "Because summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain, the district court erred by entering

summary judgment in favor of [Lynch]." *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir.1998). We conclude that summary judgment on the basis of qualified immunity was improper on Curry's excessive force claim, and therefore reverse the district court's grant of summary judgment on this claim.

## IV. *False Arrest Claims*

 The district court also granted summary judgment in favor of Lynch on Curry's claim that he was falsely arrested for the offenses of resisting arrest and possession of a controlled substance.

Under New York law, the elements of a false imprisonment [or false arrest] claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. A favorable termination of the proceedings is not an element of this tort.

*Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996) (internal citations and quotation marks omitted) (emphasis omitted). "Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful. The defendant has the burden of raising and proving the affirmative defense of probable cause." *Rodriguez v. City of New York*, 149 Misc.2d 295, 296, 563 N.Y.S.2d 1004, 1005 (N.Y.Sup.Ct. 1990) (citing *Broughton v. State*, 37 N.Y.2d 451, 458, 335 N.E.2d 310, 315, 373 N.Y.S.2d 87, 94 (1975)). Probable cause is "a complete defense to a cause of action for false arrest." *Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 210, 436 N.E.2d 1279, 1280, 451 N.Y.S.2d 677, 678 (1982). Lynch pled probable cause as an affirmative defense.

The district court found that Lynch had reasonable suspicion to attempt an investi-

gatory stop of Curry because Curry was (1) in a high crime area, (2) specifically, in an area where there had been a report of shots fired, and (3) he ran when he saw the police car. These were appropriate factors for the district court to consider. Under *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), unprovoked flight from police in a high-crime area is sufficient to justify an investigatory stop. Further, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.* at 124, 120 S.Ct. 673 (internal citation omitted).

The district court found that Curry's behavior after being stopped by Lynch was sufficient to provide probable cause for his arrest. The district court stated that probable cause existed to arrest Curry for resisting arrest because he "continually reached for the back of his leg," "continued to struggle and reach for the back of his leg," and "punch[ed] Officer Lynch several times in the head and face with his fists." The district court also found that Lynch had probable cause to arrest Curry for possession of a controlled substance because Curry threw an object away during the struggle and Lynch later found a bag containing crack cocaine at the scene.

### A. *Possession of a Controlled Substance*

 We will first consider Curry's claim for false arrest as it pertains to his arrest for possession of a controlled substance. Curry testified at his deposition that he did not reach for his sock, that he did not throw anything away, and that he did not possess any controlled substance at the time he was arrested. These state-

ments are sufficient to raise a genuine issue of material fact as to whether Curry did in fact throw away a bag containing crack cocaine during his struggle with Lynch. No evidence other than Lynch's testimony contradicts these assertions.[8] Curry contends that Lynch planted the drugs and fabricated the story about Curry throwing something away that was in his sock. If a jury were to believe Curry's testimony on this point and disbelieve Lynch's testimony, it could not find that Lynch had probable cause to arrest Curry for possession of a controlled substance.

Furthermore, Lynch has not established that he is entitled to qualified immunity on this claim, because the jury could also find, if it believed Curry's testimony that he never had drugs on him that night, that no reasonable officer in Lynch's position would have believed it was lawful to arrest Curry for drug possession.[9] Construing all facts in the light most favorable to Curry, as the non-moving party, summary judgment on Curry's claim for false arrest on the possession of a controlled substance charge should be denied.

### B. *Resisting Arrest*

We now consider Curry's claim for false arrest as it pertains to his arrest for resisting arrest. Under New York law "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an *authorized arrest* of himself or another person." N.Y. Penal Law § 205.30 (McKinney 2002) (emphasis added). It is well established in New York that "probable cause to arrest is a prerequisite for making an authorized arrest,"

and if there is no probable cause to arrest a person, that person "cannot be guilty of resisting arrest." *People v. Mohamadou*, 182 Misc.2d 77, 79–80, 698 N.Y.S.2d 445, 447–48 (N.Y.Crim.Ct.1999). *See also People v. Stevenson*, 31 N.Y.2d 108, 111, 286 N.E.2d 445, 448, 335 N.Y.S.2d 52, 56 (1972) (recognizing that "the crime of resisting arrest does not occur if the arrest is illegal or unlawful").

There are thus at least two essential elements of a charge for resisting arrest under New York law: (1) the person charged must have intentionally attempted to prevent the arrest of himself or someone else, and (2) the arrest he attempted to prevent must itself have been supported by a warrant or by probable cause. No genuine issue of material fact exists as to whether Curry intentionally attempted to prevent his own arrest. Curry admitted at his deposition that he did not put his hands behind his back when ordered to do so by Lynch and Officer Yarema and that he continued trying to "crawl away" from Lynch while Lynch was attempting to handcuff him.

However, genuine issues of material fact exist as to whether the second element of this offense was met when Lynch arrested Curry, that is, whether Lynch had probable cause to arrest Curry for some independent crime at the time Curry resisted. We have determined that the record at this stage does not establish, as a matter of law, that Lynch had probable cause to arrest Curry for possession of a controlled substance. Lynch has not produced evidence showing that he had probable cause to arrest Curry for any other reason.[10]

---

**8.** Officer Yarema testified about the struggle between Curry and Lynch, but not about Curry reaching for his sock or throwing anything away.

**9.** "There is no question that the right[] ... to be free from false arrest ... [was] clearly

established at the time of the incident." *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir.1995).

**10.** We note that the New York Court of Appeals has stated that "there can be no cavil with the proposition that a citizen may use reasonable force in self-defense where the

Lynch also is not entitled to summary judgment on this claim on the basis of qualified immunity. Genuine issues of material fact exist as to whether Lynch had probable cause to arrest Curry for any reason prior to the struggle between Lynch and Curry when Curry resisted arrest. Lynch, the moving party, has not established that no genuine issue of material fact exists as to whether he reasonably believed that he had probable cause to arrest Curry for a crime. Accordingly, summary judgment on this claim should be denied.

## CONCLUSION

We affirm the district court's award of summary judgment to Syracuse on all claims. We conclude that genuine issues of material fact exist as to whether Lynch used excessive force in effecting the arrest of Curry, and as to whether Lynch had probable cause to arrest Curry for possession of a controlled substance and/or resisting arrest. We further conclude that Lynch has not established that he is entitled to summary judgment on the basis of qualified immunity on any of Curry's claims. Therefore, we vacate the district court's grant of summary judgment as to the plaintiff's 42 U.S.C. § 1983 claims against Lynch and remand this case for further proceedings. We also vacate the district court's dismissal of Curry's pendent state law claims and direct the dis-

trict court to reinstate those claims for further proceedings.

The parties shall bear their own costs.

---

force exerted by the police in effecting an arrest is excessive." *Stevenson*, 31 N.Y.2d at 112, 286 N.E.2d at 448, 335 N.Y.S.2d at 56. *See also People v. Branch*, 223 A.D.2d 882, 637 N.Y.S.2d 220 (N.Y.App.Div.1996) (holding that a person cannot be convicted of resisting arrest where the officer was attempting to "secure" the person, pursuant to police department policy, but did not have probable

cause at that time to actually arrest the person). Accordingly, even if we were to accord collateral estoppel effect to the ALJ's finding that Curry struck Lynch, Curry's striking Lynch during his struggle with Lynch (and after he was struck in the back of the leg by Lynch's flashlight) would be insufficient to support a finding of probable cause to arrest Curry.