Ruben Victor CENTENO–BERNUY, Waldo Centeno–Bernuy, Aquiles Mauro Galindo–Buendia, and Joel Efrain Pecho–Vivanco, Plaintiffs,

v.

Donald A. PERRY, Defendant.

No. 03–CV–457–A.

United States District Court, W.D. New York.

Dec. 18, 2003.

Patricia C. Kakalec, Daniel Werner, Farmworker Legal Services of New York, Inc., New Paltz, NY, for Plaintiffs.

Donald A. Perry, Gasport, NY, Defendant Pro Se.

Nancy Jean Schivone, Farmworker Law Project, Legal Aid Society of Mid–New York, Inc., New Paltz, NY, for Plaintiffs.

## DECISION AND PRELIMINARY INJUNCTION

ARCARA, District Judge.

### *INTRODUCTION*

Plaintiffs Ruben Victor Centeno–Bernuy, Waldo Centeno–Bernuy, Aquiles Mauro Galindo–Buendia and Joel Efrain Pecho–Vivanco commenced this action on June 16, 2003 against defendant Donald A. Perry, claiming that Perry has unlawfully retaliated against them for taking steps to enforce their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the Migrant and Seasonal Agricultural Worker Protection Act, 29

U.S.C. §§ 1801 *et seq.* ("MSAWPA"). On June 17, 2003, plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction, enjoining Perry from continued retaliation. On June 23, 2003, the Court denied plaintiffs' request for a TRO from the bench and scheduled a hearing on the motion for a preliminary injunction. The preliminary injunction hearing was held on July 11 and August 6, 2003. On July 28, 2003, during the pendency of the hearing, Perry, who is proceeding *pro se,* moved for dismissal. Following the preliminary injunction hearing, the parties submitted proposed findings of fact and conclusions of law.[1]

After considering the evidence adduced at the hearing and the submissions of the parties, the Court denies Perry's motion to dismiss and grants plaintiffs' motion for a preliminary injunction. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

The plaintiffs are from Peru and entered this country legally as non-immigrant H–2A agricultural workers.[2] During the Summer and Fall of 2001, plaintiffs worked for Becker Farms, located in Gasport, New York. They also lived on the Becker Farms property.

Becker Farms is owned and operated by Oscar Vizcarra and Melinda Vizcarra, who are husband and wife. Melinda Vizcarra is the daughter of the defendant Donald A. Perry. Perry formerly owned and operated Becker Farms, and currently lives in a house located within the confines of the Becker Farms property. Becker Farms has been in Perry's family for about 110 years.

Sometime during the evening of November 2, 2001 or the early morning of November 3, 2001, plaintiff packed up all their belongings and left Becker Farms, without informing anyone at Becker farms that they were leaving. About two days later, Oscar Vizcarra reported plaintiffs as missing to the United States Immigration and Naturalization Service ("INS").[3] He also told Perry that the plaintiffs had left and that he had reported them to the INS. He further told Perry that the INS seemed reluctant to pursue the plaintiffs

---

1. On December 9, 2003, Perry filed a motion requesting the appearance of the New York Farm Bureau and the Statewide Farmer Organization as *amici curiae* in this action. The Court has broad discretion to permit or deny the appearance of *amici curiae* in a given case. *United States v. Ahmed,* 788 F.Supp. 196, 198 n. 1 (S.D.N.Y.), *aff'd,* 980 F.2d 161 (2d Cir.1992). Here, the Court denies Perry's request for the following reasons: (1) the motion should have been made by the *amici curiae* themselves, not by Perry; (2) the motion is untimely as the hearing has been completed and the preliminary injunction motion has been submitted for decision; and (3) additional memoranda of law would not aid the Court in its evaluation of the preliminary injunction motion.

2. H–2A workers are non-immigrant aliens admitted to the United States for agricultural labor or services of a temporary or seasonal nature. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 20 C.F.R. § 655.100(b). The H–2A worker is only admitted into the United States to work for a designated employer and for the duration of the certified period of employment, which cannot exceed one year. If the employment relationship ends—whether the employee quits or the employer terminates the employment—the H–2A visa expires, and the worker must leave the United States. *See* 8 C.F.R. §§ 214.2(h)(5)(viii), (h)(11)(iii)(A)(1), & (h)(13).

3. Under 8 C.F.R. § 214.2(h)(5)(vi)(A), an employer of an H–2A worker must notify the INS (which is now part of the United States Department of Homeland Security) within 24 hours if an H–2A worker absconds.

without an address or location where they could be found.

On November 15, 2001, Perry himself contacted the INS by telephone and informed the INS that the plaintiffs had absconded. During this conversation, Perry did not claim that plaintiffs were terrorists, members of a sleeper cell, or supporters of terrorism. Again, according to Perry, the INS seemed reluctant to pursue the plaintiffs without an address or location where they could be found.

On November 28, 2001, plaintiffs filed a civil action ("the Becker Farms litigation") in this Court against Becker Farms, Oscar Vizcarra, and Melinda Vizcarra, alleging that these defendants failed to pay plaintiffs for many hours of work they performed and failed to pay overtime to the plaintiffs in violation of the FLSA. The Becker Farms litigation complaint also alleges violations of the MSAWPA and other laws. The complaint was served on Becker Farms and Oscar Vizcarra that same day, November 28th.

Within a day or two of the Becker Farms litigation complaint being served upon the Vizcarras and Becker Farms, defendant Perry learned for the first time—on a Thursday or a Friday—about the lawsuit. Immediately thereafter, on the following Monday, December 3, 2001, Perry went to the INS office in Buffalo, New York, where he met with INS Agent Stephen Truong. Perry told Agent Truong that the plaintiffs had absconded and that they were therefore illegal aliens. At this meeting or soon thereafter, Perry also stated to the INS, for the first time, his belief that the plaintiffs are part of a Peruvian terrorist group known as "Sendero Luminoso" or "Shining Path" and constitute a so-called "sleeper cell" here in the United States. Prior to the Becker Farms litigation being filed, Perry never made any such allegations to anyone.

Since the Becker Farms litigation has been filed, Perry has repeatedly told various government agencies and officials—including among others the United States Attorney General, the New York State Attorney General, the United States Department of Labor, the New York State Police, the INS, the United States Department of Homeland Security, and the United States State Department—that plaintiffs are terrorists, members of a sleeper cell, and terrorist sympathizers, among other things. For example, on or about July 28, 2003, Perry wrote to the Undersecretary of the Department of Homeland Security indicating that plaintiffs are a "sleeper cell" and have been involved with "[t]rafficking in and smuggling of sympathizers of the Sendero Luminoso." Plaintiffs' Exhibit 16. Perry has also repeatedly told officials that plaintiffs' counsel are smugglers and traffickers in illegal aliens, accusing plaintiffs' counsel and others of running "the biggest operation of trafficking in and smuggling of illegal aliens in the 21st Century." Plaintiffs' Exhibit 6. Perry has filed a number of submissions with this Court repeating his claims that plaintiffs are terrorists and part of a sleeper cell. *See, e.g.,* Plaintiffs' Exhibit 8.

Despite Perry's insistence to government authorities that plaintiffs are terrorists, he admitted at the hearing that he has no evidence that the plaintiffs are terrorists or members of a sleeper cell; it is simply his belief or opinion that they are. Hearing Transcript ("Tr.") at 130–01. He stated that his belief is based on the state or region in Peru where the plaintiffs were born, a magazine article from 1992, and the events surrounding the tragedy of September 11, 2001. Tr. at 132–39. None of this information, however, is specific to these plaintiffs. Perry further testified, without an understandable explanation, that the Becker Farms litigation "rein-

forced" his belief that the Plaintiffs were terrorists. Tr. at 138–39.

The Court finds that Perry's claims that plaintiffs are terrorists are baseless and that he has known from the outset that they were baseless. He has asserted these sensational yet unfounded claims to government authorities for the sole purpose of preventing or dissuading plaintiffs from pursuing the Becker Farms litigation. Both the timing and nature of Perry's accusations support such a finding. Before the Becker Farms litigation was filed, Perry had already reported the plaintiffs to the INS and knew that the INS was not going to make a special effort to find them. He never mentioned anything regarding terrorism to the INS during this initial contact. He made the sensational allegations regarding terrorism to the INS and other government agencies only after he learned of the Becker Farms litigation. He admits that he has no evidence to support these allegations. It is clear that he was simply trying to take advantage of the government's concern about terrorism following the tragic events of September 11, 2001 to prod the INS and other government agencies into making a more serious attempt to locate and deport the plaintiffs, thus making it more difficult for them to pursue the Becker Farms litigation. At the hearing, Perry expressed concern that the Becker Farms litigation may result in Becker Farms having to declare bankruptcy and him losing his home. This concern is the true motivation behind his actions.

A potential witness for plaintiffs in the Becker Farms litigation, Ms. Flor Aber, testified at the hearing that she no longer wishes to be a witness in the Becker Farms litigation because of the conse-

quences she has faced from Perry after plaintiffs disclosed her as a potential witness during discovery in that case. She fears that Perry will continue with his actions against her. She appeared in Court for the hearing in this case only because she was subpoenaed by plaintiffs.

Plaintiffs did not testify at the hearing.[4] Instead, three of the four plaintiffs submitted sworn affidavits. According to the affidavits, plaintiffs were unwilling to appear in Court for the hearing because of their fear of retaliation by Perry. The affidavits also detail the alleged emotional distress that plaintiffs have suffered and continue to suffer as a result of Perry's actions. Because plaintiffs did not appear at the hearing, the Court obviously did not have an opportunity to observe their demeanor while testifying. Nor were the plaintiffs subject to cross-examination. Thus, the Court gives their affidavit statements regarding emotional distress no weight.

The record shows that Perry intends to continue reporting plaintiffs to government authorities unless the Court orders otherwise. In a June 10, 2003 letter to Magistrate Judge H. Kenneth Schroeder, Perry indicated that he will "continue to track these terrorist sympathizers down for the Homeland Security Dept." Plaintiffs' Exhibit 9. While testifying during the preliminary injunction hearing, after first denying that he would continue to try to track down the plaintiffs, Perry reaffirmed his intention to do so upon being confronted with his earlier statement. Tr. 22–24. Perry also testified that in the absence of an order from the Court enjoining him, he will continue his allegations to authorities that the plaintiffs are "terrorists and ter-

---

4. Plaintiffs did move to appear by telephone, but the Court denied that request. *See* Item No. 15.

rorist sympathizers and members of a sleeper cell." Tr. 21. More specifically, Perry indicated that in the absence of an injunction, he will continue to contact the Homeland Security Department, the Federal Bureau of Investigation, and the United States Attorney's Office, among other agencies, about the plaintiffs and their counsel. Tr. 21–22, 24, 29. In fact, Perry testified that he intends to pursue the plaintiffs for the rest of what he considers his ten-year life expectancy. Tr. 25.

There is a real possibility that plaintiffs and their counsel may face adverse action as a result of Perry's actions. For example, according to Perry, the State Department's Diplomatic Security Service, in cooperation with the United States Attorney's Office in Buffalo, is investigating the plaintiffs and their counsel on charges of being a "sleeper cell" and participating in visa fraud. *See* Item No. 39, Exhibit 2. Perry states that he is assisting the investigation by providing information. *Id.* Moreover, having left the H2–A program and absconded, it appears undisputed that plaintiffs are now, in fact, in this country illegally. If Perry succeeds in getting the INS to locate and deport the plaintiffs back to Peru, it will be difficult, if not impossible, for the plaintiffs to continue to pursue their claims in the Becker Farms litigation.

On or about June 7, 2002, the New York State Attorney General's Office subpoenaed Perry to appear for a deposition on June 20, 2002, for the purpose of determining whether an action or proceeding should be commenced against him under the New York Executive Law and the New York Labor Law as a result of his actions towards the plaintiffs. Plaintiffs' Exhibit 14. According to Perry, the deposition was conducted as scheduled by Assistant Attorney General ("AAG") C. Michael Higgins, lasted several hours, and was taken down by a court stenographer. The Court has not been provided with a transcript of the deposition or any written findings by the Attorney General's Office. Perry testified that in June 2003, he received a message on his telephone answering machine from AAG Higgins, which stated as follows:

> Hi Mr. Perry. This is Michael Higgins again. I just want to explain vis-a-vis an extension of that previous message. We are in settlement agreement with the farm's lawyer. In order to bring any kind of civil proceedings against you within the laws that we enforce, we would have to prove that you were an agent of the farm, and it is just that we don't think that we could prevail under that statute and our chances of prevailing are not good. I hope that answers your question.

Tr. at 103. Perry did not call AAG Higgins as a witness at the hearing, nor did he provide the tape or certified transcript of the alleged telephone message from Higgins.

## CONCLUSIONS OF LAW

### I. *Preliminary Injunction Standard*

 A party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure must establish that it will suffer irreparable harm if no injunction is issued and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

### II. *Irreparable Harm*

 Harm which is not capable of being fully remedied by money damages is irreparable harm. *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969,

975 (2d Cir.1989). The Second Circuit has recognized that, depending on the facts and circumstances of a particular case, retaliation and the resulting weakened enforcement of federal law can *itself* be irreparable harm in the context of a preliminary injunction application. *See Holt v. Continental Group,* 708 F.2d 87, 91 (2d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984). Several other courts—some citing the *Holt* decision—have similarly held that where a party has retaliated against another party attempting to enforce protected rights, such retaliation is an important factor to consider in determining whether irreparable harm has been established. *See, e.g., Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 938–39 (9th Cir.1987); *Garcia v. Lawn,* 805 F.2d 1400, 1405–06 (9th Cir.1986); *Equal Employment Opportunity Comm'n v. Target Stores, Inc.,* 1984 WL 1071, *2 (D.Minn. Sep.21, 1984); *De Novellis v. Shalala,* 947 F.Supp. 557, 563 (D.Mass.1996), *aff'd,* 135 F.3d 58 (1st Cir. 1998).

■ It is well established that the anti-retaliation provision of the FLSA is critical to the entire enforcement scheme of the federal wage and hour law. *See, e.g., Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *Equal Employment Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs,* 438 F.Supp. 876, 879–80 (S.D.N.Y.1977) ("Witnesses who lose work opportunities, suffer harassment, and are otherwise retaliated against because of their testimony, are going to be much less likely to testify in a subsequent proceeding ... if such retaliation goes unchecked."). Unchecked retaliation, no matter its form, subverts the purpose of the FLSA, the MSAWPA and other federal employment laws. Indeed, the chilling effect of retaliation on migrant farmworkers in particular has been well-documented. *See Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332 (5th Cir. 1985) ("Further, the legislative history of the [MSAWPA] notes that farm workers who attempt to assert their rights must overcome a general background of fear and intimidation caused by the widespread practice of retaliation against those who complain about violations.").

■ The Court finds that plaintiffs will likely suffer irreparable harm if Perry's retaliatory actions are not enjoined. Perry's retaliation negatively affects plaintiffs' ability to enforce their rights under the FLSA and the MSAWPA. Plaintiffs are reluctant to appear in court to pursue their rights because they are afraid that Perry will immediately contact authorities and have them arrested and deported, thereby making it difficult, if not impossible, for them to pursue the Becker Farms litigation. Perry's actions have also caused potential witnesses, such as Flor Aber, to be reluctant to testify. Moreover, Perry's retaliatory actions undermine the important purposes of the anti-retaliation provisions of the FLSA and MSAWPA, and could potentially chill other migrant workers who might seek to enforce their rights.

### III. *Likelihood of Success on the Merits*

■ Plaintiffs have demonstrated a likelihood of success on the merits of their FLSA and MSAWPA retaliation claims. The FLSA provides that it is "unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] ...." 29 U.S.C. § 215(a)(3). Under the FLSA, a person is defined as any "individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29

**136**

U.S.C. § 203(a). Thus, the anti-retaliation provision of the FLSA does not apply only to employers; it applies to "any person." *See, e.g., Bowe v. Judson C. Burns, Inc.,* 137 F.2d 37, 38–39 (3d Cir.1943); *Rivera v. Installation Club Sys.,* 623 F.Supp. 269, 271 (D.P.R.1985) (noting that "person" is broader than "employer"); *Donovan v. Schoolhouse Four, Inc.,* 573 F.Supp. 185, 188 (W.D.Va.1983).

The MSAWPA provides that "[n]o person shall intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any migrant or seasonal agricultural worker because such worker has, with just cause, filed any complaint or instituted, or caused to be instituted, any proceeding under [the MSAWPA] ...." 29 U.S.C. 1855(a). Similar to the FLSA, the MSAWPA defines a person as "any individual, partnership, association, joint stock company, trust, cooperative, or corporation." 29 U.S.C. § 1802(9). Therefore, like the FLSA, one need not be an employer to be liable under the anti-retaliation provision of the MSAWPA. *Compare, e.g.,* 29 U.S.C. § 1822(a) ("Each farm labor contractor, agricultural employer, and agricultural association which employs any migrant agricultural worker shall pay the wages owed to such worker when due.").

■ To establish a *prima facie* claim of retaliation in violation of the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Lai v. Eastpoint Int'l, Inc.,* 2000 WL 1234595, *3 (S.D.N.Y. Aug. 31, 2000) (citations omitted). The Court finds that the plaintiffs have established a *prima facie* case of retaliation in this case.

Plaintiffs have undertaken a protected activity under the FLSA in filing the Becker Farms litigation and Perry knew of the lawsuit within a few days after it was filed. Perry's actions after learning of the lawsuit, *i.e.,* reporting plaintiffs to the INS and making baseless allegations to the government that plaintiffs are terrorists, constitute an adverse employment action. *See, e.g., Singh v. Jutla & C.D. & R's Oil, Inc.,* 214 F.Supp.2d 1056, 1059 (N.D.Cal.2002) (discussing forms of illegal retaliation under the FLSA other than retaliatory discharge); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 103 F.Supp.2d 1180 (N.D.Cal.2000) (reporting a plaintiff to the INS in retaliation for a plaintiff having complained under the FLSA constituted an adverse employment action). Further, there is sufficient evidence to support a finding of a causal connection between plaintiffs' protected activity under the FLSA and Perry's adverse employment action. As stated above, the evidence shows that Perry asserted the sensational yet unfounded claims that plaintiffs are terrorists to government authorities for the sole purpose of preventing or dissuading plaintiffs from pursuing the Becker Farms litigation. Both the timing and nature of Perry's accusations support such a finding. Perry's first contact with the INS, before the Becker Farms litigation was filed, did not involve the sort of accusations that Perry has made about plaintiffs since learning of the lawsuit. The escalating accusations all occurred after the Becker Farms litigation was filed. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (adverse action following close on the heels of protected activity supports an inference of retaliation); *Amaker v. Haponik,* 2000 WL 343772, *3 (S.D.N.Y. Mar. 31, 2000) (holding that the timing of conduct was sufficient to state retaliation claim).

Similarly, to establish a retaliation claim under the MSAWPA, a plaintiff must show that he or she has engaged in a protected activity and that the defendant has "intimidate[d], threaten[ed], restrain[ed], coerce[d], blacklist[ed], discharge[d], or in any manner discriminate[d]" against the plaintiff. 29 U.S.C. § 1855(a). The elements of an MSAWPA retaliation claim are established here. Plaintiffs engaged in a protected activity by filing a lawsuit raising MSAWPA claims, and, as set forth above, Perry attempted to intimidate, threaten or coerce plaintiffs as a result.

## IV. Sufficiently Serious Questions and Balance of Hardships

■ Even assuming *arguendo* that plaintiffs have failed to establish a likelihood of success on the merits, they are still entitled to a preliminary injunction because they have established sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. For the reasons already stated, there are serious questions going to the merits of plaintiffs' claims of retaliation making them fair ground for litigation. Further, the balance of hardships tips decidedly in plaintiffs' favor. The failure to grant an injunction will harm the plaintiffs. Without the sought-after injunctive relief, plaintiffs will continue to face difficulty in prosecuting the Becker Farms litigation, and could face criminal and administrative action against them because of Perry's accusations. In contrast, if an injunction is issued, Perry will not suffer any hardship. He will simply be prevented from continuing to repeat his baseless claims about the plaintiffs to government authorities.

## V. Defenses Asserted by Perry

Perry has asserted a number of defenses, either expressly or impliedly, to plaintiffs' claims. None of these defenses has any merit.

■ Perry argues that plaintiffs, as H–2A workers, had available to them and were required to exhaust certain administrative remedies before bringing any litigation in federal court. He has failed, however, to cite any authority in support of this argument. In fact, there are many cases in which H–2A workers have filed wage cases in state or federal court without first going through an administrative process. *See, e.g., Arriaga v. Florida Pac. Farms, L.L.C.,* 305 F.3d 1228, 1235 (11th Cir.2002) ("The provisions of the FLSA indisputably apply to the Farmworkers [who were H–2A workers]"); *Frederick County Fruit Growers Ass'n, Inc. v. Martin,* 968 F.2d 1265, 1272–75 (D.C.Cir.1992); *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1341–2 (5th Cir.1985).

Perry next argues that because the New York State Attorney General's Office has already determined that he is not liable for retaliation against the plaintiffs, the plaintiffs are collaterally estopped from pursuing a claim of retaliation in this Court. This argument fails for two reasons.

First, Perry has submitted no credible evidence that the New York State Attorney General's Office has determined that he did not retaliate against the plaintiffs. Perry has not provided any type of written finding from the Attorney General's Office, nor has he provided a transcript of the hearing held at the Attorney General's Office. He simply refers to an alleged telephone message from AAG Higgins, purportedly stating that the Attorney General's Office was not going to pursue civil proceedings against him because he was not an agent of Becker Farms. The alleged telephone message does not mention retaliation. Perry did not call AAG Higgins to testify nor did he offer into evi-

dence the tape or a certified transcript of the message.

Second, even assuming *arguendo* that the New York State Attorney General's Office has in fact made some determination regarding claims of retaliation by Perry against the plaintiffs, such a finding would have no collateral estoppel or preclusive effect in this case. As a general rule, "federal courts must give the [state] agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Therefore, New York law governing collateral estoppel applies to the analysis of this issue. *See Curry v. City of Syracuse,* 316 F.3d 324, 331 n. 4 (2d Cir.2003) (holding collateral estoppel did not bar plaintiff from bringing excessive force claim in federal court even though state administrative law judge made adverse decision in parole revocation hearing); *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 730 (2d Cir.2001) (holding collateral estoppel did not bar plaintiff from bringing Family Medical Leave Act claim in federal court even though the New York State Division of Human Rights rejected similar claim).

In New York, in order to invoke collateral estoppel, there must be an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and the party to be estopped must have had a "full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Adm'r of Bronx County,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969); *see also Curry,* 316 F.3d at 331. "An issue is 'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Curry,* 316 F.3d at 332.

Based on the foregoing test, collateral estoppel has no application here. There is no identity of legal issues and the plaintiffs have not had the requisite opportunity to contest the New York State Attorney General's purported decision. The legal issues are not identical because the Attorney General's Office investigated Perry for retaliation under New York Labor Law, whereas the plaintiffs in the instant case allege retaliation under federal law-the FLSA and the MSAWPA. The difference in the laws enforced is critical because New York Labor Law applies only to employers or their agents, *see* N.Y. Lab. Law § 215, while the FLSA and the MSAWPA anti-retaliation provisions apply to any "person." *See* 29 U.S.C. § 215(a)(3) ("it shall be unlawful for any person ..."); 29 U.S.C. § 1855(a) ("No person shall ..."). Thus, the primary issue apparently determined by the Attorney General's Office-whether Perry was plaintiffs' employer or an agent of plaintiffs' employer-is not decisive or even relevant to plaintiffs' FLSA and MSAWPA retaliation claims in this action. In addition, contrary to Perry's repeated assertions, there is no indication that the Attorney General's Office did any investigation whatsoever into retaliation under the FLSA or the MSAWPA. In fact, the investigatory subpoena issued to Perry only addresses potential liability under state law. *See* Plaintiffs' Exhibit 14. Finally, plaintiffs did not have a full and fair opportunity to litigate the issues before the Attorney General's Office. Plaintiffs were not parties to the proceedings before the Attorney General's Office and did not have an opportunity for discovery or to cross-exam witnesses. In sum, the doctrine of collateral estoppel has no application in this case and the alleged New York State Attorney General's determination has no preclusive effect on the issues before this Court.

Lastly, Perry argues that the proposed injunction would violate his First Amendment rights. This argument is again without merit. The injunctive relief requested does not violate Perry's First Amendment rights because Perry has no First Amendment right to engage in retaliatory conduct prohibited under the FLSA and the MSAWPA. Stated differently, Perry has no constitutional right to make baseless accusations against plaintiffs to government authorities for the sole purpose of retaliating against the plaintiffs for filing the Becker Farms litigation.

### CONCLUSION

For the reasons stated, the Court denies Perry's motion to dismiss and grants the plaintiffs' motion for a preliminary injunction. Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure, it is hereby

**Ordered** that defendant Donald A. Perry is restrained and enjoined from contacting or communicating with, in any way, any local, state or federal government official or agency, including but not limited to the United States Attorney General, the United States Attorney, the New York State Attorney General, the United States Department of Labor, the New York State Police, the INS, the United States Department of Homeland Security, and the United States State Department, with regard to the plaintiffs Ruben Victor Centeno–Bernuy, Waldo Centeno–Bernuy, Aquiles Mauro Galindo–Buendia and Joel Efrain Pecho–Vivanco, and their attorneys; and it is further

**Ordered** that defendant Donald A. Perry is restrained and enjoined from any further retaliation, in any form, against the plaintiffs; and it is further

**Ordered** that if defendant Donald A. Perry fails to comply with this preliminary injunction, he may be held in either civil or criminal contempt, or both; and it is further

**Ordered** that this preliminary injunction shall remain in full force and effect until further order of the Court; and it is further

**Ordered** that the requirement of bond or other security under Rule 65(c) of the Federal Rules of Civil Procedure is waived and that plaintiffs shall not be required to post bond or other security in connection with the relief granted herein.

IT IS SO ORDERED.